UNITED STATES of America, Plaintiff,

v.

**Jack McNATT, Defendant.**

**Crim. No. 85–481–Y.**

United States District Court,
D. Massachusetts.

June 16, 1986.

Joseph J. Balliro, Balliro, Mondano & Balliro, Boston, Mass., for defendant.

Gary C. Crossen, U.S. Atty., for U.S.

## MEMORANDUM AND ORDER ON THE MOTION OF THE DEFENDANT FOR A JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OF GUILTY

YOUNG, District Judge.

Pursuant to Rule 29 of the Fed.R.Crim. Proc., the Defendant Jack McNatt ("McNatt") brings this motion for a judgment of acquittal notwithstanding the verdict of guilty returned by the jury upon an indictment charging McNatt with aiding and abetting Arcangelo DiFronzo ("DiFronzo") with receiving stolen bank property in violation of 18 U.S.C. §§ 2 and 2113(c).

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."

*Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949) quoting L. Hand, J. in *United States v. Peoni,* 100 F.2d 401, 402 (2nd Cir.1938). The question for analysis is whether the United States has here presented sufficient evidence to warrant the jury concluding, beyond a reasonable doubt, that McNatt knowingly· participated in DiFronzo's receipt of stolen bank property with the intention of aiding and abetting that result. *United States v. Campa,* 679 F.2d 1006, 1011 (1st Cir.1982); *see United States v. Bradley,* 421 F.2d 924, 927 (6th Cir.1970). In making this analysis, this Court must review the evidence considered as a whole, including all inferences that may reasonably be drawn therefrom, in the light most favorable to the United States. *United States v. Indelicato,* 611 F.2d 376, 384 (1st Cir.1979); *United States v. Brown,* 603 F.2d 1022 (1st Cir.1979); *United States v. Gabriner,* 571 F.2d 48, 50 (1st Cir.1978); *United States v. Scibelli,* 549 F.2d 222, 229 (1st Cir.), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).

McNatt was a bank officer at the Bank of New England. Among various responsibilities, he had the responsibility for over-

seeing the check printing aspects of the bank's servicing of a major money market fund. In this capacity, he had access to account information of the bank's and the fund's clients and well knew the names and account numbers of the accounts containing the largest amounts of cash upon which extraordinarily large checks were drawn from time to time.[1] Likewise, McNatt had access (though not sole access) to the signature cards for these accounts. Finally, McNatt was entrusted with various blank check forms not yet encoded with the appropriate account and bank numbers necessary for computerized handling in actual practice. McNatt had these samples because it was his function to see to the printing of the proper finished product. It was bank policy that the sample blank checks ought not leave the bank nor should account numbers or balances be disclosed to those outside the bank's employ.

At trial, competent evidence permitted the inference that, on two separate occasions, certain blank sample checks came into DiFronzo's possession. McNatt's handwriting appears on certain of the blank sample checks which DiFronzo possessed on each of the two separate occasions. On at least one of the blank sample checks there appears, in McNatt's handwriting, the account and bank numbers and related information pertaining to an account which, on occasion, McNatt knew contained cash in excess of ten million dollars. DiFronzo was not an employee of the bank, had no access to the business areas of the bank open to McNatt, and had no business with the information or the blank sample checks.

Together with one Hardy, DiFronzo was a principal in a mail handling business. McNatt and Hardy appear to have been acquaintences, lunching together with some frequency during the times material to the indictment. On the day he tendered his resignation to the bank, McNatt, then appraised of an investigation into the sus-

pected misuse of the sample blank checks, left the bank and drove to meet with Hardy.

The sample blank checks which turned up in DiFronzo's hands were ascertained to have been missing from the sample blank check forms committed to McNatt's custody. When confronted with his handwriting on certain of the checks, McNatt said that he didn't think that the writing on one of the checks was his but that it could have been.

That's it. Is that enough to convict McNatt of aiding and abetting DiFronzo in receipt of stolen bank property (the sample blank checks)? In the specific circumstances of this case, this Court concludes that it is not. To see why, it is necessary to consider the trial as a whole.

McNatt and DiFronzo were tried together on a three count indictment which charged each of them with conspiracy, bank larceny, and charged DiFronzo with receipt of stolen bank property and McNatt with aiding and abetting that crime. At trial, there was substantial evidence that DiFronzo was involved in a bizarre and intricate scheme involving the forging of a multi-million dollar check drawn on the Bank of New England. The scheme necessarily involved the obtaining of blank check forms, privately encoding those forms outside the bank's normal processes, and forging the authorized signature thereon, then cashing the check at some other bank—a bank in Beiruit was suggested but the conspirators ultimately settled upon an Atlanta bank. This extraordinary scheme was proved at trial through the conversations of DiFronzo and an undercover informant then working for the F.B.I. but posing as a co-conspirator with DiFronzo. While the success of such a scheme necessarily appeared to hinge on the presence of some inside person within the Bank of New England, and while DiFronzo admitted that he had such a contact, McNatt's name was never mentioned. DiFonzo's own state-

---

1. In fairness, it appears that this was common knowledge among all the bank employees in McNatt's area and that the clearance of an ex- ceptionally large check was a common item of gossip.

ments were admitted against him pursuant to Fed.R.Evid. 801(d)(2)(A) and the statements of the undercover informant were admitted against DiFronzo as the statements of a co-conspirator of a party during the course and furtherance of a conspiracy. Fed.R.Evid. 801(d)(2)(E).

Following the procedure outlined in *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir.1980), this Court also conditionally admitted the declarations of DiFronzo and the undercover informant against McNatt as well. Neither McNatt nor DiFronzo testified. Then, at the close of all the evidence, this Court made the rulings required by *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977). The Court ruled that although there was sufficient independent evidence to conclude by a fair preponderance of the evidence that McNatt was up to no good, the evidence was insufficient—without speculation—to conclude that McNatt was a part of the particular bizarre conspiracy that had so engrossed DiFronzo. Accordingly, the jury was emphatically instructed to disregard the statements of the undercover informant and DiFronzo when considering the case against McNatt.[2] The Court entered a verdict of acquittal for McNatt on the conspiracy count, ruling that the independent evidence, standing alone, was insufficient for the jury to conclude beyond a reasonable doubt that McNatt was guilty of conspiracy. The counts charging bank larceny and aiding and abetting DiFronzo in receipt of stolen bank property were submitted to the jury upon the theory that the independent evidence was sufficient to warrant a guilty verdict on each of these counts. The jury acquitted McNatt of bank larceny and convicted him of aiding and abetting DiFronzo in receipt of stolen bank property.

In these particular circumstances, however, this Court concludes upon reflection that a judgment of acquittal must enter in McNatt's favor.

To convict McNatt of aiding and abetting, the United States must first prove the substantive crime charged, i.e. that DiFronzo received stolen bank property. *Shuttlesworth v. City of Birmingham*, 373 U.S. 262, 265, 83 S.Ct. 1130, 1132, 10 L.Ed.2d 335 (1963); *United States v. Martinez*, 479 F.2d 824, 829 (1st Cir.1973). This it did, albeit on vastly more evidence since, as to DiFronzo, the jury was entitled to consider the evidence of the conspiratorial conversations between the undercover informant and DiFronzo. Indeed, the jury convicted DiFronzo on all counts. It is true, moreover, that "generally, it is not essential that there be actual communication between an aider and abetter and the principal. Communication between them may be through a third person. Nor is it necessary that the aider and abetter know by whom the crime is actually perpetrated." *White v. United States*, 366 F.2d 474, 476 (10th Cir.1966); *see United States v. Bradley*, 421 F.2d 924, 927 (6th Cir.1970).

Here, however, it is important to remember that McNatt has been acquited of bank larceny. Necessarily, the crime of

---

**2.** It is perhaps helpful to note that the *Ciampaglia* rule involving the timing of the *Petrozziello* rulings, works very well where the government manages to make out a conspiracy upon the independent evidence before the court. That is, admitting the evidence conditionally against each of the alleged conspirators avoids the judge's having to make repeated and perhaps confusing limitations upon the receipt of evidence as it is presented to the jury. The trial proceeds smoothly without unnecessary interruption or judicial injections. Where, as here, the court fails to find that a conspiracy has been made out by a fair preponderance of the evidence, however, the non-conspirator who may be indicted on other substantive crimes faces an extraordinary dilemma. In retrospect, perhaps I ought have declared a mistrial at this point since it seems virtually impossible for a jury to disregard the great bulk of the evidence which focused on the plot to cash a multi-million dollar check. No party asked for a mistrial, however, and the Court declined to grant one absent a manifest necessity. At this juncture, perhaps what is required is a new trial on the ground of juror confusion rather than a judgment of acquittal. It is an extremely close question. However, due to the considerations discussed above, this Court concludes that a judgment of acquittal is the better course in these circumstances.

aiding and abetting DiFronzo in receipt of stolen bank property implies more than the essential elements of taking the documents themselves from the bank for a wrongful purpose. This must be so, since principles of double jeopardy prevent two charges with precisely the same elements from being submitted to the jury. *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The additional element of the aiding and abetting count is that the government must prove beyond a reasonable doubt that McNatt willfully associated himself in some way with DiFronzo receiving stolen bank property. It is at this point that the government falters. It is not enough to prove that McNatt was up to no good. It is not enough to prove that his conduct would warrant the conclusion beyond a reasonable doubt that someone would wind up with stolen bank property. The evidence here is simply insufficient to conclude beyond a reasonable doubt that, whatever wrongful conduct McNatt was up to, he knowingly associated himself with a venture that specifically included the receipt by DiFronzo of stolen bank property.[3]

Accordingly, pursuant to Rule 29 of Fed. R.Crim.Proc., a judgment of acquittal upon count three of the indictment must be, and hereby is, entered in McNatt's favor.

---

**3.** A factual comparison of this case with those on which the United States relies supports the conclusion reached here. *See United States v. Campa*, 679 F.2d 1006, 1010–1011 (1st Cir.1982) (abettor, identified as contact man to drug supplier, present at drug transaction and places purchase price in envelope); *United States v. Indelicato*, 611 F.2d 376, 385 (1st Cir.1979) (abettor knowingly possessed stolen checks and attempted to circulate them as genuine); *United States v. Martinez*, 479 F.2d 824, 829–830 (1st Cir.1973) (abettor present during negotiations for drug transaction, counsels principal, and takes steps to keep the proceedings private); *United States v. Bradley*, 421 F.2d 924, 927 (6th Cir.1970) (abettor placed burglar tools in Oldsmobile observed at scene of crime; Oldsmobile's license plates came from junkyard where abettor previously employed; abettor purchased cutting tips used in robbery); *United States v. White*, 366 F.2d 474, 476 (10th Cir.1966) (abettor arranging for purchase of particular type of auto to match existing car mortgage where purchase price is ridiculously low found guilty of aiding and abetting unlawful interstate transportation of stolen car).