UNITED STATES of America,
Appellant,

v.

Jack McNATT, Defendant, Appellee.

No. 86–1727.

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1987.
Decided March 11, 1987.

---

Gary C. Crossen, Asst. U.S. Atty., with whom Robert S. Mueller, III, U.S. Atty., Boston, Mass., was on brief, for appellant.

Juliane Balliro, with whom Joseph J. Balliro and Balliro, Mondano & Balliro, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, Circuit Judge, ALDRICH and ROSENN,* Senior Circuit Judges.

COFFIN, Circuit Judge.

The government appeals a district court order granting defendant-appellee Jack McNatt's motion for acquittal notwithstanding the verdict after a federal jury found McNatt guilty of aiding and abetting the receipt of stolen bank property in violation of 18 U.S.C. §§ 2113(c) and 2. *United States v. McNatt*, 637 F.Supp. 882, 886 (D.Mass.1986). Following a review of the evidence adduced at trial, we vacate the order and direct the district court to restore the jury's verdict.

### I. *Factual Setting.*

Jack McNatt, formerly the Systems Manager in the Corporate Agency Department of the Bank of New England ("Bank"), was tried together with co-defendant Arcangelo DiFronzo on a three count indictment that charged each of them with conspiracy, bank larceny, and receipt of stolen bank property.[1] At trial, the government presented substantial evidence tending to implicate DiFronzo in a multi-million dollar check counterfeiting and forgery scheme involving E.F. Hutton Money Market checks serviced by the Bank. The scheme apparently involved obtaining blank check forms from the Bank, magnetically encoding the checks, forging the necessary authorized signatures, and then cashing one or more checks for a substantial amount at another bank. The government sought to prove the details of this scheme by intro-

---

* Of the Third Circuit, sitting by designation.

1. DiFronzo was charged with the substantive offense of receiving stolen bank property, while McNatt was charged only with aiding and abetting the crime.

ducing tape recordings of conversations between DiFronzo and Larry Reservitz, a government informant posing as a coconspirator. Despite DiFronzo's admission that he had a contact inside the Bank, McNatt's name was never mentioned on the tapes.

Other evidence presented at trial established that, within the scope of his employment at the Bank, McNatt supervised the printing of the E.F. Hutton Money Market checks, had access to relevant account information and signature cards, and was aware of the E.F. Hutton accounts with the largest balances. McNatt enjoyed the highest levels of security clearance for access to the business area of the Bank (24 hours) and to the Bank's computer. Furthermore, the evidence established that, during 1984, McNatt was engaged in an "enhancement project" designed to expand the account numbers on the E.F. Hutton checks from ten to eleven digits. In this regard, he worked closely with MICR Data System, Inc., the printer of the E.F. Hutton checks, and supervised much of the necessary testing of the new system. In the course of supervising this particular project, McNatt was entrusted with various blank check forms that were not yet encoded with the appropriate account and other information. Bank policy strictly prohibited both the removal of these sample checks from the Bank's business offices and the disclosure of account numbers or balance information to persons outside the Bank.

Other evidence at trial permitted the inference that, on two separate occasions, DiFronzo received blank sample checks that originated at the Bank and that he delivered these checks to Reservitz. On one occasion, DiFronzo also received signature cards from the Bank's records. McNatt admits that his handwriting appears on certain of the checks received by DiFronzo. One of the blank checks, in fact, contains handwritten entries providing, and showing the placement of, the name, address, account number, check number, and other information necessary to make the check negotiable. A federal agent testified that McNatt, when first confronted with the handwriting on this check, responded that he did not think the handwriting was his, but that it could be. Subsequently, at trial, McNatt stipulated to the fact that the handwriting was in fact his. Furthermore, Richard Zoch, president of MICR Data System, testified for the government to the effect that the handwriting on the sample blank check had no business significance and does not compare in any fashion with the communications his company generally receives in the course of its business.

DiFronzo, together with his next-door neighbor, John Hardy, operated a mail handling business. The evidence at trial indicated that McNatt knew both DiFronzo and Hardy, and McNatt further stipulated that he met Hardy for lunch or drinks often during the times material to the indictment, their latest meeting occurring just two days before McNatt's resignation. McNatt also stipulated that on the day he resigned from the Bank under pressure, he left the Bank and drove directly to Hardy's home in Somerville, where the two men met briefly. Finally, other evidence offered by the government concerned an inventory of McNatt's work area by Bank officials three or four days after his resignation. Among other things, the officials located the sample checkbooks from which some of the checks delivered to Reservitz via DiFronzo had been removed.

After the close of all the evidence, the court made the rulings required by *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977), and found that "although there was sufficient independent evidence to conclude by a fair preponderance of the evidence that McNatt was up to no good, the evidence was insufficient—without speculation—to conclude that McNatt was a part of the particular bizarre conspiracy that had so engrossed DiFronzo." 637 F.Supp. at 885. The court therefore entered a verdict of acquittal for McNatt on the conspiracy count[2] and instructed the jury to disregard the tape recorded statements of DiFronzo and Reservitz when considering the

---

**2.** We do not consider the propriety of this ruling in the context of this appeal.

case against McNatt on the remaining two counts of the indictment.

The jury found DiFronzo guilty on all three counts of the indictment. With regard to McNatt, however, the jury acquitted him of bank larceny and convicted him of aiding and abetting DiFronzo in the receipt of stolen bank property. The district court then granted McNatt's motion for acquittal notwithstanding the verdict and the government appealed.

## II. *Standard of Review.*

 We begin by noting that the standard of review for a judgment of acquittal notwithstanding the verdict is identical to the test employed to measure the sufficiency of evidence supporting a guilty verdict. The test is whether, considering the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences that can be drawn from such evidence, a rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. Hensel,* 699 F.2d 18, 33 (1st Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *United States v. Patterson,* 644 F.2d 890, 893 (1st Cir.1981) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We must resolve any issue of credibility in favor of the jury's verdict, *United States v. Winter,* 663 F.2d 1120, 1127 (1st Cir.1981), and we must defer to the jury's verdict if the evidence can support varying interpretations, *United States v. Rivera-Sola,* 713 F.2d 866, 869 (1st Cir.1983). In other words, the prosecutor need only produce that quantum of evidence by which a reasonable trier of fact *could* find guilt beyond a reasonable doubt; there is no requirement to produce evidence that would *compel* a finding of guilt beyond a reasonable doubt.

 To convict McNatt of aiding and abetting DiFronzo in the receipt of stolen bank property under 18 U.S.C. §§ 2113(c) and 2, the government had to prove two distinct elements. First, it had to prove, as it did, that DiFronzo committed the substantive crime of receiving stolen bank property. Second, it had to show that McNatt "associated himself with the venture, that he participated in it as something he wished to bring about, that he sought by his actions to make it succeed." *United States v. Campa,* 679 F.2d 1006, 1010 (1st Cir.1982) (quoting *United States v. Martinez,* 479 F.2d 824, 829 (1st Cir.1973)). Although the "vital element to be proven" is that McNatt shared in DiFronzo's "essential criminal intent," this element "may be inferred from the attendant facts and circumstances." *United States v. Campa,* 679 F.2d at 1010. The issue before us, therefore, is whether the government presented sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that McNatt knowingly associated himself with DiFronzo's check counterfeiting and forgery scheme or sought by his actions to make the scheme succeed.

## III. *Evidence of Aiding and Abetting.*

 The evidence that follows, viewed *as a whole* in the light most favorable to the government, together with all legitimate inferences that can be drawn from it, supports our conclusion that there was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that McNatt knowingly associated himself with the venture or sought by his actions to make it succeed.

First, McNatt occupied a position of trust within the Bank. He was well aware of the Bank's policy regarding the security of sample checks and, as part of his job duties, was entrusted with the safekeeping of several blank sample checks. The evidence, including the Bank's inventory of McNatt's workspace following his resignation, further indicated that the stolen checks and other materials received by DiFronzo were originally in McNatt's possession. Second, McNatt's handwriting appeared more than once on blank sample checks found to be in DiFronzo's possession and intended to be used as part of the counterfeiting and forgery scheme. Third, and perhaps most importantly, the government established that at least one set of handwritten entries made by McNatt—

which included information necessary to encode, forge, and negotiate an E.F. Hutton Money Market check drawn on one of the largest accounts serviced by the Bank—was unrelated to McNatt's legitimate business responsibilities at the Bank. Fourth, when initially questioned concerning these suspicious notations, McNatt refused to identify the handwriting on the blank check as his own. Finally, McNatt knew both DiFronzo and his business partner, Hardy, and met often with Hardy during the times material to the indictment. Indeed, McNatt stipulated that upon learning of the pending investigation and tendering his resignation to the Bank, he travelled directly to Hardy's home (next door to DiFronzo's residence) for a brief meeting.

As the Second Circuit has aptly noted, "[s]eemingly innocent acts taken individually may indicate complicity when viewed collectively and with reference to the circumstances in general." *United States v. Mariani*, 725 F.2d 862, 865–66 (2d Cir. 1984). While we acknowledge that the evidence against McNatt is not overwhelming, we think that a jury, after viewing the evidence described above collectively and with reference to the circumstances, could find beyond a reasonable doubt that McNatt knowingly associated himself with the venture or sought by his actions to make it succeed. We sympathize with the district court's retrospectively expressed sentiments that McNatt may have been disadvantaged by being tried in conjunction with DiFronzo, but conclude that the verdict must stand. Accordingly, we hold that the district court erred in ruling that there was not sufficient evidence for the jury to convict McNatt of aiding and abetting DiFronzo in the receipt of stolen bank property.

*For the foregoing reasons, the district court's order granting defendant's motion for acquittal notwithstanding the verdict is vacated and the case remanded with instructions to reinstate the jury's verdict and for further proceedings consistent with this opinion.*