**UNITED STATES, Appellee,**

v.

**Franklyn Milton BROWNE,
Defendant, Appellant.**

**UNITED STATES, Appellee,**

v.

**Darrin TAYLOR, Defendant, Appellant.**

**Nos. 88–2171, 88–2172.**

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1989.

Decided Dec. 12, 1989.

Jeffrey M. Williams, Santurce, P.R., by appointment of the Court, for defendant, appellant Franklyn Milton Browne.

Victor Amador, San Juan, P.R., by appointment of the Court, for defendant, appellant Darrin Taylor.

Jose R. Gaztambide, Asst. U.S. Atty., Rio Piedras, P.R., with whom Daniel F. Lopez Romo, United States Attorney, Hato Rey, P.R., Charles E. Fitzwilliam, Acting U.S. Atty., and Jorge L. Arroyo, Asst. U.S. Atty., Old San Juan, P.R., were on briefs, for appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

* Of the Second Circuit, sitting by designation.

TIMBERS, Circuit Judge:

Appellants Franklyn Milton Browne and Darrin Taylor (collectively "appellants") appeal from judgments of conviction entered on October 6, 1988 and November 3, 1988, respectively, in the District of Puerto Rico, Raymond L. Acosta, *District Judge*, upon jury verdicts of guilty on charges of aiding and abetting in the unlawful importation of cocaine into the United States in violation of 21 U.S.C. § 952(a) (1988), aiding and abetting in the unlawful possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988), and aiding and abetting in the unlawful possession of cocaine on board an aircraft in violation of 21 U.S.C. § 955 (1988). A pretrial motion to suppress incriminating statements made by appellants during their interrogations was denied by the district court upon findings that Browne and Taylor made their statements freely and voluntarily.

On appeal, both appellants contend that, in light of the chain of custody defects, the district court erred in admitting in evidence drugs seized during a customs search. They also contend that the district court erred in denying their motions to suppress incriminating statements obtained during custodial interrogation. They claim that these statements were obtained illegally as a result of coercion and intimidation by federal agents in violation of the Fifth Amendment privilege against self-incrimination.

Each appellant also raises separate claims of error.

Taylor contends that the district court erred in denying his motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29.

Browne contends that his incriminating statements were obtained in violation of his Fifth Amendment right to have counsel present during custodial interrogation. Browne also contends that the district court erred in allowing his oral statements in evidence since the government had assured his counsel that it would not use the statements. He further contends that the district court erred in admitting in evidence tape recordings of the conversation between co-defendant Billy McDowell and himself.

For the reasons set forth below, we affirm the judgment of conviction with respect to Taylor; but we reverse the judgment of conviction with respect to Browne and remand for a new trial as to him.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Appellants arrived at Roosevelt Roads Naval Base in Puerto Rico from Howard Air Force Base in Panama on January 30, 1988. They were on board Military Air Command flight number 480.

U.S. Customs Inspector Angel Luis Villegas was the inspector on duty at the terminal. Villegas conducted a customs search of the passengers' baggage on that flight. He initially discovered a substance in two duffel bags which he suspected was cocaine. These bags belonged to individuals not involved in this case. A third duffel bag was searched in which cocaine and a military garment bearing the name "Taylor" were found. The boarding manifest indicated the presence of only one person named "Taylor", namely Darrin Taylor. A fourth duffel bag was opened in which cocaine and a military garment bearing the name "Browne" were found. There was only one passenger with the name "Browne" on the flight.

Appellants were arrested and advised of their constitutional rights. They signed waiver of rights forms. During interrogation, both gave incriminating statements. Two notes with similar names and telephone numbers were found in the possession of appellants. The edges of the notes matched and appeared to have been written on one piece of paper. Browne agreed to call Billy McDowell, whose telephone number appeared on one note. The conversation was monitored and recorded. A sham narcotics transaction was arranged. This took place in Texas and led to the arrest of McDowell.

Appellants were charged in a three count indictment returned February 10, 1988 with the three offenses set forth in paragraph one of this opinion.

At a hearing held on June 21, 1988, Judge Acosta denied appellants' motions to suppress incriminating statements made during custodial interrogation. He stated that "[a]fter careful consideration of the demeanor and credibility of the witnesses, as well as the evidence submitted, together with the arguments of counsel, I find that from the totality of the circumstances that the statements made by Mr. Browne and Mr. Taylor were freely and voluntarily given."

Following a jury trial, each appellant was convicted on each of the three counts. This appeal followed.

## II. TAYLOR'S CLAIMS OF ERROR

### A. *Chain of Custody Claim*

■ Taylor contends that the packages of cocaine seized during the customs inspection were improperly admitted at trial because the government failed to identify the initial link in the chain of custody. Taylor therefore contends that the cocaine was not properly authenticated and the government failed to establish with reasonable probability that the evidence had not been altered in any material respect subsequent to the crime.

In support of this claim of error, Taylor points to the testimony of Base Security Officer Hamilton, who was present when Taylor's duffel bag was opened and searched. Her testimony indicated that

1. Hamilton testified that, in her presence, a customs agent unlocked and opened a duffel bag which contained five packages of a substance suspected to be cocaine and a military garment bearing the name "Taylor". At first, she testified that the name of that customs agent was Melendez. Later, she testified that the person who opened Taylor's bag was customs inspector Villegas.

2. The testimony at trial established that the second customs officer turned over the evidence to a Drug Enforcement Administration special agent who later placed the evidence in bags

she was confused as to the name of the customs officer who opened and searched Taylor's duffel bag.[1]

The testimony of U.S. Customs Inspector Villegas, the person who in fact searched Taylor's duffel bag, however, provides the initial link in the chain of custody. He recognized the packages of cocaine introduced at trial because they bore his identification markings which he had written after he found the packages in Taylor's bag. He testified that, after he discovered the packages of cocaine, he marked each package with his initials, the time and the abbreviation "HOW" for Howard Base, Panama, the place from which the cocaine had come. He further testified that he separated the cocaine found in Taylor's bag away from other cocaine which had been found, and that he retained custody of the cocaine until he gave the cocaine to a second customs officer.[2]

We recently stated that "[i]n order to decide whether to admit the exhibits as evidence, the trial court must determine whether there is a reasonable probability that the evidence has not been altered in any material respect since the time of the crime." *United States v. Franchi–Forlando*, 838 F.2d 585, 588 (1st Cir.1988). We review the trial court's determination for an abuse of discretion. *United States v. Williams*, 809 F.2d 75, 89–90 (1st Cir.), *cert. denied*, 481 U.S. 1030 (1987), *cert. denied*, 481 U.S. 1072 (1987), *cert. denied*, 482 U.S. 906 (1987).

In view of Villegas' testimony, we hold that there was no abuse of discretion on the part of the district court in admitting the cocaine in evidence.[3]

which he sealed and signed and later identified at trial. The bags were then transported to a laboratory, where a forensic chemist analyzed the contents of the packages, signed and initialed them, and resealed them in envelopes which he identified at trial.

3. We further note that, once the proponent of the evidence meets the threshold requirement of showing with "reasonable probability" that the evidence has not been altered in any material respect from its original condition, any doubts concerning the possibility of alteration goes to the weight of the evidence and *not* to its admis-

## B. *Suppression Claim*

■ Taylor also contends that his incriminating statements were inadmissible because they were not voluntarily given. He asserts that, as a result of alcohol consumption and medication, as well as intimidation by federal agents, he was coerced into signing an inculpatory statement prepared by a federal agent. He says that he was shaking and crying during the interrogation. He also asserts that he was hit on the head during the interrogation.[4]

We have stated that the test of voluntariness is determined by " 'whether the will of the defendant had been overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of circumstances.' " *Bryant v. Vose*, 785 F.2d 364, 367–68 (1st Cir.) (quoting *Procunier v. Atchley*, 400 U.S. 446, 453 (1971)), *cert. denied*, 477 U.S. 907 (1986). Some of the factors to be considered include " 'the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation.' " *United States v. Alvarado*, 882 F.2d 645, 649 (2d Cir.1989) (quoting *United States v. Mast*, 735 F.2d 745, 749 (2d Cir.1984)); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (enumerating factors).

In view of the evidence adduced at the suppression hearing, we are not persuaded by Taylor's claim of involuntariness. There is ample evidence in the record to support the district court's finding of voluntariness with respect to Taylor's statements. The testimony of U.S. Customs Agent Hector Luis Marte and Drug Enforcement Administration Special Agent Thomas Kusen established that Taylor was advised of his *Miranda* rights; that he read and signed a waiver of rights form; that he read and signed a statement prepared by Marte which incriminated him; and that he made incriminating oral statements. Both Marte and Kusen testified that, during the two sessions of interrogation, Taylor appeared responsive and showed no signs of fatigue or alcohol consumption. Marte testified that at no time during his interrogation of Taylor did he tap Taylor's head to wake him up. Kusen testified that when Taylor started to cry and shake during the second session of interrogation, he gave Taylor time to compose himself. It is undisputed that at no time during the interrogations did Taylor request to see an attorney.

In short, we agree with the district court that Taylor's statements were freely and voluntarily given. We hold that the district court properly denied Taylor's motion to suppress his incriminating statements.

## C. *Claim Regarding Denial of Motion for Judgment of Acquittal*

■ This brings us to Taylor's final contention that the district court erred in denying his motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29. In determining whether a trial court properly denied a motion for judgment of acquittal, we must review the facts in the light most favorable to the government, drawing all reasonable inferences supporting the government's position. *United States v. McMahon*, 861 F.2d 8, 11 (1st Cir.1988). "We must resolve any issue of credibility in favor of the jury's verdict . . . and we must defer to the jury's verdict if the evidence can support varying interpretations. . . ." *United States v. McNatt*, 813 F.2d 499, 502 (1st Cir.1987) (citations omitted). The government "need only produce that quantum of evidence by which a reasonable trier of fact *could* find guilt beyond a reasonable doubt; there is no requirement to produce evidence that would *compel* a finding of guilt beyond a reasonable doubt." *Id.* (emphasis in original). Moreover, the

---

sibility. *United States v. Williams, supra,* at 89–90.

**4.** Taylor testified at the suppression hearing that during the first session of interrogation, he "put [his] head down on one of the desks and [the first agent] came by and started hitting—tapping me to wake up." It was determined at the suppression hearing that the agent who conducted the first interrogation was U.S. Customs Agent Hector Luis Marte.

government may prove its case entirely by circumstantial evidence and need not exclude every reasonable hypothesis inconsistent with guilt, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt. *United States v. Rivera Rodriguez*, 808 F.2d 886, 890 (1st Cir.1986).

Based on the evidence adduced at trial, including the cocaine found in Taylor's bag and Taylor's incriminating statements, all viewed as a whole in the light most favorable to the government, together with all proper inferences to be drawn from the evidence, we conclude that there was sufficient evidence for a rational trier of fact to find Taylor guilty beyond a reasonable doubt on all three counts:

We hold that the district court properly denied Taylor's motion for judgment of acquittal.

## III. BROWNE'S SUPPRESSION CLAIM OF ERROR

Browne contends that his incriminating statements were obtained in violation of his Fifth Amendment right to have counsel present during custodial interrogation. He claims that during his interrogation and before giving any incriminating statements, he invoked his right to counsel, a request disregarded by his interrogators.[5] Inexplicably, the government failed in its brief to address Browne's claim in this respect. Furthermore, although the district court found that Browne's statements were freely and voluntarily given, it did not address the question whether Browne in fact had invoked his right to counsel.

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." These procedural safeguards require that the police inform the defendant that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* "Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings." *Moran v. Burbine*, 475 U.S. 412, 420 (1986).

■ Once an accused has invoked his right to counsel, he cannot be subjected to further interrogation until counsel has been provided, unless the accused himself initiates further communication with his interrogator. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). Furthermore, "a valid waiver of that right cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. Under the *Edwards* "bright-line rule", all questioning must cease after an accused requests counsel, regardless of any question of waiver, unless the accused himself initiates the conversation. *Moran v. Burbine, supra,* at 423 n. 1; *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (per curiam). We have held that any statements made after an accused has invoked his right to counsel and the police have initiated further investigation "cannot be the result of waiver but must be presumed a product of compulsion, subtle or otherwise." *United States v. Porter*, 764

---

5. At the suppression hearing, Browne gave the following testimony:

"Browne: Then at the time I asked to see an attorney. When I saw that I was getting nowhere [sic], I asked to see an attorney but they told me that I would have plenty of time to see an attorney and all I had to do now was to worry about answering these questions.

Q: Did they stop the interrogation at that moment?
Browne: No, they did not.
Q: They continued interrogating?
Browne: They kept on interrogating me.
Q: They ignored your request?
Browne: They ignored my request."

F.2d 1, 7 (1st Cir.1985), *cert. denied,* 481 U.S. 1048 (1987).

■ After carefully reviewing the record before us, we hold that Browne's statements were obtained in violation of the prophylactic *Edwards* rule. Our analysis is simplified by the government's inexplicable failure to address in its brief Browne's claim which involves a basic principle of constitutional law.[6] Further, the government does not challenge Browne's assertion that he invoked his right to counsel during interrogation.[7] Consequently, we are left with the following unchallenged allegations: Browne asserted his right to counsel during interrogation; his request was disregarded; and his interrogators continued their questioning until Browne gave his incriminating statements.

We hold that Browne's incriminating statements were erroneously admitted in evidence in violation of the prophylactic *Edwards* rule. Although there was other evidence against Browne, we decline to hold that the admission of his incriminating statements was harmless beyond a reasonable doubt. *See United States v. Porter, supra,* at 7 ("When trial error infringes on constitutional rights we have previously held that we must reverse unless we find that the error was harmless beyond a reasonable doubt.") (citing *United States v. Christian,* 571 F.2d 64, 69–70 (1st Cir. 1978)).

We reverse Browne's judgment of conviction and remand the case for a new trial as to him.[8]

6. We note that this glaring omission in the government's brief reflects the government's inept preparation of this case. At oral argument, we asked the assistant U.S. Attorney for a response to Browne's claim with respect to right to counsel. The assistant U.S. Attorney was unable to respond, stating only that he was not the prosecutor in the case. Such an answer is utterly unacceptable.

The prosecution's error in this case, taken together with other prosecutorial errors that we have recently found in cases tried in the District of Puerto Rico, gives us particular cause for concern. This case involves a violation of the well-known, clear rule, set forth by the Supreme Court in *Edwards v. Arizona, supra,* 451 U.S. 477, that once a suspect requests a lawyer, the police must discontinue their questioning until the lawyer is obtained. *See Moran v. Burbine, supra,* 475 U.S. at 423 n. 1; *Smith v. Illinois, supra,* 469 U.S. at 98; *United States v. Porter,* 764 F.2d 1, 7 (1st Cir.1985), *cert. denied,* 481 U.S. 1048 (1987). If the prosecution believed that the defendant in this case lied in saying he requested a lawyer, the prosecution was negligent in failing to produce evidence to the contrary; if the prosecution believed the defendant told the truth (or if the prosecution failed to look into the matter), it is open to yet more criticism. In one other recent case, *United States v. Pacheco–Ortiz,* 889 F.2d 301, 302–03 (1st Cir.1989) (per curiam), the same United States Attorney's Office failed to warn a grand jury witness that he was a target of the investigation—a clear violation of well-known Department of Justice Guidelines. In yet another recent case, *United States v. Doe,* 878 F.2d 1546, 1549 (1st Cir.1989), the same United States Attorney's Office brought a case under the wrong statute.

We understand that in a hard-working United States Attorney's Office, with many cases to prosecute, and too few prosecutors, some mistakes are inevitable. Nonetheless, the mistakes here are sufficiently more serious than ordinary, and have followed so closely one upon the other, that we ask the United States Attorney to take steps to prevent a repetition.

7. Indeed, the assistant U.S. Attorney conceded at oral argument that he did not have a response to Browne's claim nor did he think that there was evidence in the record which contradicted such claim. Our own search of the record revealed only one government witness, U.S. Customs Agent Juan Daniel Pineda, who testified that Browne did not request to see an attorney. However, Pineda, who was one of Browne's interrogators, also admitted that he was not present each time Browne was interrogated and did not know what happened in other interrogations. The relevant testimony is as follows:

Direct Examination:
   "Q: I ask you if at any time during your questioning of Mr. Browne, he requested to see an attorney?
   A: No, he didn't, sir."
Cross Examination:
   "Q: Were you present every time Mr. Browne was interrogated?
   A: No, sir.
   Q: So, you cannot testify as to the fact, what happened during other interrogations; isn't that a fact?
   A: Right, sir."
Thus, we cannot conclude—based solely on Pineda's testimony—that Browne did not assert his right to counsel during his interrogations.

8. Since we reverse Browne's conviction based on the violation of the *Edwards* rule, we find it neither necessary nor appropriate to reach his other claims of error.

**396**

IV.

To summarize:

As to Taylor, after carefully considering his claims of error, we conclude that his judgment of conviction must be affirmed. We hold that the district court did not abuse its discretion in admitting at trial the cocaine found in Taylor's duffel bag. We also hold that the district court properly denied Taylor's motion to suppress his incriminating statements. We further hold that the district court properly denied Taylor's motion for judgment of acquittal.

As to Browne, we hold that the admission of his incriminating statements violated the prophylactic *Edwards* rule. His judgment of conviction is reversed and the case is remanded for a new trial as to him.

AFFIRMED in part; REVERSED and REMANDED in part.