**UNITED STATES of America**

**v.**

**Christian COLON.**

**Cr. No. 92–10302–GN.**

United States District Court,
D. Massachusetts.

Aug. 19, 1993.

---

AnneMarie Hassett, Federal Defender Office, Boston, MA, for Colon.

Ralph F. Boyd, Jr., Office of the U.S. Atty., Boston, MA, for U.S.

## MEMORANDUM OF DECISION AND ORDER

GORTON, District Judge.

The defendant, Christian Colon, filed a motion to dismiss this indictment and a motion to suppress certain evidence on March 25, 1993. The defendant's motion to dismiss was premised on an alleged speedy trial act violation. The motion to suppress was based upon the alleged failure of the defendant to waive, knowingly and intelligently, his Fifth Amendment right against self incrimination prior to making certain statements. The Court denies both of the defendant's motions.

### I. *The Motion to Dismiss*

The defendant Colon has moved to dismiss the instant indictment, with prejudice, and for his release pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* As grounds for this motion, the defendant argues that 1) the present indictment is a re-prosecution of an indictment that should have been dismissed with prejudice under the Speedy Trial Act, and 2) the Speedy Trial Act has again been violated since the reindictment, in that the period of non-excludable delay since the reindictment exceeds the 70–day trial limit set forth in the Speedy Trial Act and the 90–day continuous detention limit.

### A. *Procedural History*

On August 29, 1991, the grand jury returned a four-count indictment ("the first indictment") charging defendant, Christian Colon, with the following offenses:

Count 1: felon in possession of a firearm (18 U.S.C. 922(g)),

Count 2: possession of cocaine with intent to distribute (21 U.S.C. § 841(a)),

Count 3: possession of crack cocaine with intent to distribute (21 U.S.C. § 841(a)), and

Count 4: use of a firearm in relation to a drug trafficking crime (18 U.S.C. § 924(c)).

On September 17, 1992, the defendant filed a motion to dismiss the first indictment because the 70–day time limit under the Speedy Trial Act had expired. On October 9, 1992, the Honorable Walter Jay Skinner acted upon the defendant's motion and dismissed the first indictment, without prejudice. On October 19, 1992, the defendant filed a motion for reconsideration of the dismissal without prejudice. The Government filed its opposition to defendant's motion on November 17, 1992. The Court did not hold a hearing on the motion for reconsideration, but Judge Skinner denied it on February 25, 1993.

The grand jury reindicted the defendant on the same four counts on October 15, 1992 ("the second indictment"). The case was drawn to the Honorable Douglas P. Woodlock. In the new criminal action, the defendant filed an assented-to motion for reassignment of the case to Judge Skinner on October 19, 1992.[1] This Court (per Woodlock, D.J.) allowed the motion on November 2, 1992, and the new action was transferred to Judge Skinner.

The government filed a motion for a scheduling conference and assignment for trial on January 6, 1993. That motion was unopposed but never acted upon by the Court. The government filed a second, unopposed motion for a scheduling conference and assignment for trial on January 25, 1993. The Court disposed of that motion on February 3, 1993 by an endorsement on the motion indicating that the case would be reassigned to another judge. The government then filed a third, unopposed motion for a scheduling conference, assignment for trial and arraignment on February 25, 1993. Magistrate Judge Robert Collings ruled on that motion by allowing it, in part, on March 10, 1993.

The defendant did not appear before any judicial officer for any matter concerning the second indictment until the arraignment, which occurred on March 8, 1993.

### B. *The Speedy Trial Act*
#### 1. *The First Indictment*

The defendant argues that the second indictment should be dismissed because he believes that the first indictment should have been dismissed with prejudice, instead of being dismissed without prejudice. If the Court had dismissed the first indictment with prejudice, that would have barred the second indictment. In essence, the defendant asks the Court to reconsider his previous motion to dismiss for a second time. The short answer to that argument is that Judge Skinner previously heard the defendant's motion to dismiss with prejudice, and on October 19, 1992, determined that the first indictment should be dismissed without prejudice. The defendant sought reconsideration of Judge Skinner's ruling but Judge Skinner denied that motion on February 25, 1993. The defendant now reasserts arguments that Judge Skinner has twice previously rejected. The Court sees no reason to disturb Judge Skinner's rulings on this matter.

#### 2. *The Second Indictment*
##### a. *The Indictment/Arraignment Distinction*

The defendant argues that the Speedy Trial Act has again been violated with respect to the second indictment. Specifically, he argues that the Speedy Trial Act's 70–day time limit began to run on the day that the grand jury re-indicted the defendant on October 9, 1992. The express language of the Speedy Trial Act, however, does not support the defendant's position. The Speedy Trial Act provides that in the event an indictment is dismissed upon motion of the defendant and a subsequent indictment is returned charging him with the same offense, the provisions of subsections (b) and (c) shall be applicable with respect to such subsequent ... indictment." 18 U.S.C. § 3161(d)(1). Subsection (c) provides:

> the trial of a defendant charged in an ... indictment with the commission of an offense shall commence within seventy days from the filing date ... of the ... indict-

---

1. The defendant filed his motion to reassign the case using the "new" indictment number, Cr. No. 92–10302–WD. The defendant, however, used the "old" indictment number, Cr. No. 91–10249–S, in filing his motion for reconsideration.

ment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The statute is clear that the 70–day period for commencing trial is triggered by the filing of the indictment or the defendant's appearance before a judicial officer, whichever occurs last.

The defendant argues that 18 U.S.C. § 3161(c)(1) has been construed to mean that, in the event of an indictment following dismissal of the very same charges, "the Act's time limit run anew from the date of filing the subsequent ... indictment." *United States v. Bittle,* 699 F.2d 1201, 1205 (D.C.Cir.1983); *United States v. Magana–Olvera,* 917 F.2d 401, 404 (9th Cir.1990); *United States v. Mize,* 820 F.2d 118, 122 (5th Cir.), *cert. denied,* 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987). The defendant's reliance on these cases is misplaced. The cited cases did not turn on the issue of whether, after a reindictment, the speedy trial clock begins to run from the time of the reindictment or at the defendant's first appearance before a judicial officer. Rather, the defendant apparently relies upon unpersuasive dicta from those cases, especially in light of the express language of the statute. Additionally, the Court has found no other case law which supports the defendant's position with respect to his indictment/appearance distinction. The defendant's first appearance before a judicial officer in this action was at his arraignment on March 8, 1993, the date on which this Court deems that the Speedy Trial Act's 70–day clock began to tick.

b. *The Tolling of the Speedy Trial Act*

The defendant next argues that even if the Speedy Trial Act clock began to run on the date of arraignment, the 90–day continuous-detention period provided for in 18 U.S.C. § 3164 began to run on the date of indict-ment, October 15, 1992.[2] The defendant claims that the only motions that have been filed in the instant action that could toll the running of the Speedy Trial Act since the date of the second indictment are the government's three motions for trial dates and scheduling conferences. Specifically, he argues that these motions should not toll the running of the statute because such motions do not delay a trial, but rather are routinely filed to expedite trial. Such motions do not require any resolution by the Court other than the setting of a date for counsel to appear. The defendant contends that such motions should not give rise to excludable delay under the Speedy Trial Act.

i. *Motion for Reconsideration*

■ As a preliminary matter, the defendant is incorrect in his assertion that the only motions that could have given rise to excludable time under the Speedy Trial Act are the three motions for a trial date and scheduling conference. The defendant overlooks the fact that, on October 19, 1992, he filed a motion to reconsider his motion to dismiss, with prejudice, the first indictment. Federal law (18 U.S.C. § 3161(h)(1)) provides that any period of delay resulting from "other proceedings" concerning the defendant is excludable time. Although the motion for reconsideration was technically filed with respect to the first indictment, the motion was clearly filed in "other proceedings" which affected this defendant. *See e.g. United States v. Anello,* 765 F.2d 253, 256 (1st Cir.), *cert. denied, sub nom. Wendolkowski v. United States,* 474 U.S. 996, 106 S.Ct. 411, 88 L.Ed.2d 361 (1985). At the time the motion for reconsideration was pending, both indictments were assigned to Judge Skinner and both actions were intimately related. Judge Skinner's disposition of the motion to reconsider necessarily either disposed of, or provided viability to, the second indictment. Therefore, the time which was reasonably

---

2. 18 U.S.C. § 3164(b) provides that the trial of any person shall commence not later than 90 days following the beginning of continuous detention with respect to an indictment. The continuous detention "clock" is stopped, however, for the periods of time that are excludable under the Speedy Trial Act 70–day trial clock. 18 U.S.C. § 3164(b) ("The periods of delay enumer-ated in section 3161(h) are excluded in comput-ing the time limitation specified in this section.") Therefore, the excludable time attributable to the filing of pre-trial motions (18 U.S.C. § 3161(h)(1)(F)) and the pendency of other pro-ceedings (18 U.S.C. § 3161(h)(1)) is not included in the computations of time under 18 U.S.C. § 3164(b).

required by the Court to consider and dispose of the motion to reconsider was excludable time with respect to the second indictment.

■ Alternatively, 18 U.S.C. § 3161(h)(1)(F) provides that "delay resulting from any pretrial motion" shall be excluded in computing the time within which the trial of any such offense must begin. The defendant's motion for reconsideration was a pretrial motion which was filed before the trial of this case, as a defense to the second indictment. *See United States v. Hawker*, 552 F.Supp. 117, 124 (D.Mass.1992). As such, the delay which reasonably resulted from its disposition is excludable time in this action.

■ All of the time which passed between the filing of the motion for reconsideration and the Court's final disposition thereof is not, however, excludable. The defendant filed his motion on October 19, 1992. The government responded on November 17, 1992. No hearing on the motion was held and the Court denied the motion on February 25, 1993. The relevant statute (18 U.S.C. § 3161(h)(1)(F)) provides that "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excludable. In *United States v. Bellucci*, 737 F.Supp. 706, 709–10 (D.Mass. 1990), the Court stated that § 3161(h)(1)(F) and § 3161(h)(1)(J) must be read together to determine what amount of time with respect to the filing of motions is properly excludable. In *Bellucci*, Judge Tauro explained how the two subsections interact:

> The exclusion in (F) is granted in two situations and applies differently depending on which situation occurs. The first one is when a pretrial motion requires a hearing. If a hearing is held, (F) by its terms excludes without qualification the entire period between the filing of the motion and the conclusion of the hearing. The second situation in (F) applies to motions which result in 'prompt disposition'. The inclusion of the promptness requirement was 'intended to provide a point at which time will cease to be excluded, where motions are decided on the papers

> without hearing.' (F) apparently does not exclude time in a third situation—namely, where the motion requires no hearing and its disposition is not prompt. In this situation, however, (J) permits an exclusion of up to 30 days from the time the motion is 'actually under advisement' by the court ... Reading (F) and (J) together, (J) could be viewed as a time limitation on the exclusion permitted for the motions that require no hearing and are not promptly disposed of. *Id.* at 709–710.

The defendant's motion for reconsideration did not require a hearing. Therefore the excludable time attributable to the defendant's reconsideration motion is the period from the filing of the motion to and including 30 days from the date the court received all the papers it needed to resolve the motion. The government filed its opposition on November 17, 1992. The additional 30 days which are excludable while the motion was under advisement elapsed on December 17, 1992. Thus, the time from October 19, 1992 to December 17, 1992 is properly excludable under the Speedy Trial Act.

### ii. *Motions for a Trial Date and Scheduling Conference*

■ The three motions that the government filed for trial dates and scheduling conferences also tolled the speedy trial clock. The statute expressly provides that the delay resulting from "any pretrial motion" is excludable. 18 U.S.C. § 3161(h)(1)(F). It makes no distinction between motions which are "necessary" and which, in fact, reasonably delay the proceedings and those motions which should not cause such a delay. *See Bellucci*, 737 F.Supp. at 709–710 (Court excluded ten days which were required for the Court to dispose of a motion for a scheduling conference under the Speedy Trial Act.); *See also United States v. Morales*, 875 F.2d 775, 777 (9th Cir.1989). Rather, the statute speaks of "any" pretrial motion. Therefore, the Court need not evaluate the merits of a motion to determine its Speedy Trial Act implications. *Morales*, 875 F.2d at 777. Motions for scheduling conferences and trial dates fall literally within the ambit of the expansive language of 18 U.S.C.

§ 3161(h)(1)(F) and give rise to excludable time under the Speedy Trial Act.

■ The government's first motion for a trial date and scheduling conference was filed on January 6, 1993. The defendant did not file a response to that motion and the Court never disposed of it. The motion was therefore under advisement (and the intervening time was properly excludable) until the government filed an analogous, second motion for a trial date and scheduling conference on January 25, 1993. Judge Skinner effectively ruled upon that motion by endorsing on it (on February 3, 1993) that the case would be reassigned to this session. Because the January 25, 1993 motion was identical to the earlier motion, and was presumably filed because the Court had not yet disposed of it, both motions will be treated as being disposed of on February 3, 1993. Therefore the time from January 6, 1993 to February 3, 1993 is excludable.

The government then filed a third motion for a trial date and scheduling conference on March 3, 1993.[3] That motion was disposed of on March 10, 1993 by Magistrate Collings, who allowed it, in part. Therefore the time from March 3, 1993 to March 10, 1993 is also excluded under the Speedy Trial Act.

### C. *Conclusion*

With respect to the timely trial of this matter, the Speedy Trial Act's 70–day time limit did not begin to run until March 8, 1993, the date of the defendant's arraignment.

■ With respect to the 90–day time limit for continuous detention with respect to the second indictment, 49 non-excludable days have elapsed between October 15, 1992 and March 10, 1993 (October 16—October 18, 1992 (three days), December 18, 1992—January 5, 1993 (19 days) and February 4—March 2, 1993 (27 days)).

For the foregoing reasons, defendant Colon's motion for dismissal is DENIED.

### II. *Motion to Suppress*

The defendant has also filed a motion to suppress statements that he made at 129 Dakota Street, Apt. # 2, on the evening of his arrest on December 8, 1990. Specifically, the defendant seeks to suppress statements which: 1) identified the location of a firearm and drugs which were seized during a search of his apartment, 2) admitted ownership of the firearm and drugs, and 3) admitted the defendant's prior possession of a Mack 10 firearm and identified its prior location within the apartment. The defendant contends that the Court should suppress the evidence because the Boston police did not advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 460–61, 86 S.Ct. 1602, 1620–21, 16 L.Ed.2d 694 (1966), before eliciting the incriminating statements.

### A. *Facts*

Hearings on the defendant's motion to suppress were held on April 30, May 28, and July 2, 1993. Based upon the evidence presented at the hearing, the Court finds the following relevant facts.

On the evening of December 8, 1990, the defendant Colon, as well as two other men, Domingo Santos and Efrain Rivera, left the defendant's apartment at 129 Dakota Street, and went to a shopping center to purchase beer. While the three men were stopped in the shopping center parking lot, a Boston police officer, Detective Arthur O'Connell, approached the passenger side of the defendant's car and showed Colon his police badge. Colon got out of the car and Detective O'Connell told him that he was a police officer and that he had a search warrant for Colon's apartment. Detective O'Connell also told Colon that he knew that the defendant's wife and children were in the apartment and that he would like the search to be peaceful. Colon gave Detective O'Connell his apartment keys. Detective O'Connell then required the defendant to return with him and other police officers to Colon's apartment at 129 Dorchester Street.

---

**3.** Although the government claims that it filed this third motion on February 25, 1993, the Court's docket indicates that the motion was filed on March 3, 1993.

After arriving at the defendant's apartment, Detective O'Connell and Officer Dominquez approached the doorway of the apartment first, while another police officer and the defendant waited to enter. Detective O'Connell and Officer Dominquez first knocked on the apartment door and identified themselves as police officers. They then entered the apartment by use of the defendant's key, and other police officers, with the defendant, immediately followed the first two officers into the apartment. After some shouting and screaming and after Detective O'Connell asked Colon to ask the women in the apartment to calm down, Detective O'Connell read the defendant and the other occupants of the apartment, their Miranda warnings in English. Officer Dominquez then read the defendant and the other occupants of the apartment, their Miranda warnings in Spanish. Defendant Colon acknowledged, by nodding his head, that he understood the Miranda warnings.

The police then proceeded to search the apartment. After the police found baggies of cocaine in a suspended ceiling, the officers showed the cocaine to the defendant. Colon then indicated that the drugs that were found were his, and that no one else had anything to do with them. Colon then made several other statements. In response to questions by police officers, he indicated that there was a gun under the mattress of the bed, and that there was cocaine in the kitchen pantry. In response to subsequent questioning, he indicated that he had previously possessed a Mack 10 firearm and showed the police officers where he had stored the gun, but indicated that he no longer possessed the gun. The incriminating statements were made after the police had read the defendant his Miranda warnings and after he acknowledged that he understood the warnings and had waived his right to remain silent. As a result of the search, the defendant was arrested on state firearms and narcotic charges.

### B. *The Law*

It is clear that the defendant Colon was subject to custodial interrogation by the Boston police officers on the night of December 8, 1990, during the search of his apartment. The Boston police officers initiated questioning of the defendant, while they detained him in his apartment, thus significantly depriving the defendant of his freedom of action. The admissibility of any statements made by the defendant on December 8, 1990, thus hinges on whether the defendant was read his Miranda warnings, and whether he voluntarily, knowingly and intelligently waived his Fifth Amendment rights against self-incrimination prior to making any statements.

As a constitutional prerequisite to the admissibility of statements obtained from an individual who is subjected to custodial police interrogation, the suspect must be warned, prior to questioning, that he has a right to remain silent, that any statements he makes may be used as evidence against him and that he has a right to the presence of an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). After such warnings have been given, the individual may voluntarily, knowingly and intelligently waive these rights and agree to answer questions or make a statement. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986); *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630. The prosecution, however, may not use statements stemming from custodial interrogation of the accused unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630; *see also United States v. Melanson*, 691 F.2d 579, 588 (1st Cir.), *cert. denied*, 454 U.S. 856, 102 S.Ct. 305, 70 L.Ed.2d 151 (1981).

To determine if a defendant's waiver has been made voluntarily, knowingly and intelligently, the Court must consider two questions. First, was the defendant's relinquishment of the right voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation. *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141. Second, was the waiver made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.; see also Melanson*, 691 F.2d at 588. "Only if the 'totality of the circum-

stances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." *Moran,* 475 U.S. at 421, 106 S.Ct. at 1141; *see also United States v. Browne,* 891 F.2d 389, 393 (1st Cir.1989).

 In the present case, the Court finds that police officers O'Connell and Dominquez informed the defendant of his Miranda rights, both in English and Spanish, when they first entered the defendant's apartment on December 8, 1990, which was before the defendant made any incriminating statements. The Court also finds that the totality of the circumstances indicate that the defendant effectively waived his Miranda rights. Upon being read his Miranda rights, the defendant acknowledged to the officers that he understood his right against self-incrimination.

A search of the apartment was then conducted by the police officers in a professional manner, and neither the defendant, nor any members of his family, were coerced, threatened or mistreated. During the course of the search, the defendant voluntarily responded to questions by the police officers, and apparently volunteered information at other times. The defendant chose to make those statements, presumably because he knew he was responsible for the guns and drugs, and because he did not want other family members or friends to be harmed by his actions. The defendant was of sufficient age, intelligence and experience to execute a knowing waiver, he knew his Miranda rights, and made a calculated decision to cooperate. Under these circumstances, the Court finds that the defendant's waiver was voluntarily, knowingly and intelligently given.

Therefore, the Court will not suppress statements that were made by the defendant Colon on December 8, 1990. The defendant's motion to suppress will be denied.

### ORDER

It is hereby ordered by this Court that:

1. defendant's motion for dismissal and release is DENIED.

2. defendant's motion to suppress is DENIED.