UNITED STATES of America, Appellee,

v.

**Billy Ray McDOWELL, Jr.,**
**Defendant, Appellant.**

No. 89–1061.

United States Court of Appeals,
First Circuit.

Submitted Sept. 20, 1990.

Decided Nov. 14, 1990.

**1005**

Daniel F. Lopez Romo, U.S. Atty. and Jose R. Gaztambide, Asst. U.S. Atty., on brief, for appellee.

Before BREYER, Chief Judge, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

In a partial reprise of an earlier pair of appeals, defendant-appellant Billy Ray McDowell, Jr. bemoans his conviction on all three counts of an indictment charging several persons with aiding and abetting each other in the commission of various drug trafficking crimes.[1] Although we affirm his conviction, we believe that a new sentencing hearing is required.

## Background

McDowell was indicted with five other persons and tried with Frederick Browne and Darrin Taylor. The jury found them guilty on all counts. McDowell was sentenced last, and his appeal comes to us alone, not having been heard when Browne's and Taylor's appeals were argued.[2]

We summarize the record in traditional post-conviction fashion, taking the facts in the light most hospitable to the prosecution. *See United States v. Jimenez–Perez,* 869 F.2d 9, 10 (1st Cir.1989); *United States v. Cintolo,* 818 F.2d 980, 983 (1st Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987). In so doing, we borrow heavily from our earlier opinion in *United States v. Browne,* 891 F.2d 389 (1st Cir. 1989).

Billy Ray McDowell, Jr., pro se.

1. The pertinent portions of the statutes of conviction read as follows:
   It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].
   21 U.S.C. § 952(a) (1982 & Supp. V 1987).
   [I]t shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....
   21 U.S.C. § 841(a)(1) (1982 & Supp. V 1987).
   It shall be unlawful for any person to bring or possess on board any ... aircraft, ... arriving in or departing from the United States ... a

controlled substance ... unless such substance or drug is a part of the cargo entered in the manifest of ... the aircraft....
21 U.S.C. § 955 (1982 & Supp. V 1987).

2. We previously affirmed Taylor's conviction, *see United States v. Browne,* 891 F.2d 389, 392–94 (1st Cir.1989), but vacated Browne's conviction and remitted his case for retrial because, after custody had attached, the authorities persisted in interrogating him despite his request for counsel. *Id.* at 394–95. We are advised that Browne subsequently pled guilty to a single count pursuant to a plea bargain, and will not be retried. The government did not prosecute the three other persons originally accused.

Browne's and Taylor's military flight from Howard Air Force Base, Panama, stopped in Puerto Rico en route to Charleston, South Carolina, arriving at Roosevelt Roads Naval Base on January 30, 1988. A customs search of the passengers' baggage revealed a duffel bag in which cocaine and a military garment bearing the name "Taylor" were found. Taylor was arrested. Browne immediately scurried to a telephone and placed a long-distance call to McDowell in Texas. Soon thereafter, Browne's duffel bag was searched. Cocaine was found. He, too, was arrested.

Browne and Taylor were advised of their constitutional rights. Both gave incriminating statements. They said, in effect, that they had been recruited in Panama by one Anthony Pearson to deliver the drugs. They also told of being instructed to take a commercial flight from Charleston to Dallas/Fort Worth to complete the delivery. Two notes with the same names and telephone numbers were found in their possession; the edges of the notes matched and appeared to have been written on one piece of paper. McDowell's telephone number appeared on the papers. At the officers' request, Browne agreed to call him. The ensuing conversations were monitored and recorded. One was a three-way conversation involving Pearson. On at least one other occasion, appellant called Browne. That call was also recorded.

Browne's and Taylor's involvement ended when a sham narcotics transaction was arranged. A Drug Enforcement Administration (DEA) agent, Francisco Sarra, posed as codefendant Browne. After Browne's telephone calls had paved the way, Sarra called appellant on February 1 and met him that evening at the Dallas/Fort Worth airport. During that meeting, Sarra provided appellant with keys to an airport locker. Upon attempting to open the locker, which he had been told contained the imported cocaine, appellant was arrested. He had the exact amount of the "delivery fee"—$4000 in cash—on his person.[3] After his arrest, appellant's vehicle was seized in an airport parking lot and a gun was found.

With this brief prelude, we turn to appellant's principal contentions, discussing further facts only as required to place specific arguments into proper perspective.

### Suppression Issues

Appellant filed a pretrial motion to suppress the monitored telephone conversations and his discussions with Sarra at the airport. He filed no other pretrial suppression motions (although he seasonably challenged the admission of coconspirator statements at trial). We examine a variety of suppression issues against this backdrop.

1. *The Telephone Conversations.* A key to the underlying conviction was the prosecution's introduction of tape-recorded conversations between Browne and McDowell, as well as the three-way conversation in which Pearson participated. Appellant says that these conversations should have been excluded—but he offers no convincing basis for such an exclusion. It is beyond cavil that Browne consented to the telephone calls. The controlling statute is the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2521 (1982 & Supp. V 1987) (Title III). The statute specifically provides that telephone calls may be intercepted "where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); *see generally Griggs–Ryan v. Smith,* 904 F.2d 112, 116–17 (1st Cir.1990) (discussing consent exception). Thus, the recordings were not barred by Title III.

■ Undaunted, McDowell makes two other exclusionary arguments anent these conversations. The first is derivative. We earlier held that Browne's incriminating statements to the authorities were, as to him, erroneously admitted into evidence under the fifth amendment and the rule of *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981) (once an accused has invoked his right to counsel, he cannot be subjected to

---

**3.** The $4000 was carried separate from appellant's other funds.

further interrogation unless he, himself, initiates it). *See Browne*, 891 F.2d at 394–95. McDowell urges that since police questioning violated Browne's rights, Browne's ensuing conversations with McDowell should be regarded as poisoned fruit of this constitutional transgression, and hence, unusable in a court of law.

This artifice is no more than an attempt to resuscitate the long-dead doctrine of derivative standing. It overlooks that fifth amendment rights, like fourth amendment rights, are personal to the individual and may not be vicariously asserted. *See, e.g., Bellis v. United States*, 417 U.S. 85, 89–90, 94 S.Ct. 2179, 2183–84, 40 L.Ed.2d 678 (1974) (fifth amendment privilege is purely personal); *United States v. White*, 322 U.S. 694, 698–99, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) (similar); *see also Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969) (fourth amendment rights are personal rights); *Wong Sun v. United States*, 371 U.S. 471, 492, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963) (similar); *see generally Rakas v. Illinois*, 439 U.S. 128, 140 n. 8, 99 S.Ct. 421, 428 n. 8, 58 L.Ed.2d 387 (1978) (fourth amendment standing requirement comports with fifth amendment privilege against self-inculpation "which also is a purely personal right"); 4 W. LaFava, *Search and Seizure*, § 11.4 at 371 (2d ed. 1987) (cautioning "that a defendant, in any event, can prevail on a 'fruit of the poisonous tree' claim only if he has standing regarding the violation which constitutes the poisonous tree") (footnote omitted). Because McDowell had no protectable privacy interest at stake during Browne's interrogation, there could be no taint as to McDowell. *Compare, e.g., United States v. Soule*, 908 F.2d 1032, 1036–37 (1st Cir.1990) (discussing "derivative standing" principles).

■ Appellant's final attempt to bar the evidence is by branding it as hearsay. He asseverates that, since Browne was acting under the aegis of federal officers when he placed the crucial call, the statements were not admissible as coconspirator discussions under Fed.R.Evid. 801(d)(2)(E) because they were not made "during the course and in furtherance of the conspiracy." But we need not reach this issue;[4] since appellant actively participated in the talks and the tapes were duly authenticated at trial, the conversations were admissible as admissions against interest. *See, e.g.,* Fed.R. Evid. 801(d)(2)(A), 804(b)(3). We explain briefly.

McDowell's own statements could, of course, be used against him; his part of the conversations was plainly not hearsay. Nor can a defendant, having made admissions, keep from the jury other segments of the discussion reasonably required to place those admissions into context. In this instance, the other parts of the conversations were properly admitted as "reciprocal and integrated utterance(s)," *United States v. Metcalf*, 430 F.2d 1197, 1199 (8th Cir.1970), to put McDowell's statements into perspective and make them "intelligible to the jury and recognizable as admissions." *United States v. Lemonakis*, 485 F.2d 941, 948 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 1587, 39 L.Ed.2d 885 (1974); *see also United States v. Byrom*, 910 F.2d 725, 733 (11th Cir.1990); *Lee v. McCaughtry*, 892 F.2d 1318, 1325 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3244, 111 L.Ed.2d 754 (1990); *United States v. Jordan*, 810 F.2d 262, 264 (D.C. Cir.), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987); *United States v. Price*, 792 F.2d 994, 996–97 (11th Cir. 1986); *United States v. Whitman*, 771 F.2d 1348, 1352 (9th Cir.1985); *cf.* Fed.R. Evid. 106 (establishing rule of completeness as to writings or recorded statements). Moreover, because Browne's statements were introduced only to estab-

---

**4.** While not dwelling on the point, we note our general agreement with the Seventh Circuit "that a co-conspirator's arrest does not in itself terminate a conspiracy as a matter of law, for the conspirators may remain fully capable of carrying out their purpose...." *United States v. Papia*, 560 F.2d 827, 835 (7th Cir.1977). *See*

*also United States v. Casamayor*, 837 F.2d 1509, 1513 (11th Cir.1988), *cert. denied*, 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989). Thus, McDowell's telephone conversation with Pearson, at least, was clearly admissible under Fed. R.Evid. 801(d)(2)(E).

lish that they were uttered and to give context to what McDowell was saying, they were not hearsay at all. *See* Fed.R.Evid. 801(c) (defining "hearsay" as "a statement ... offered in evidence to prove the truth of the matter asserted").[5]

■ *2. The Airport Discussions.* McDowell also seeks to suppress various incriminating statements which he made to an undercover agent at the Dallas/Fort Worth airport, prior to his arrest. The statements were uttered as McDowell and the agent strode toward a locker allegedly containing the smuggled contraband. Because the agent had an arrest warrant in his pocket at the time, appellant asserts that he was effectively "in custody" and should have been given *Miranda* warnings. We disagree.

Although the determination of whether a suspect is in custody demands that the trier utilize an objective standard, *see United States v. Masse,* 816 F.2d 805, 809 & n. 5 (1st Cir.1987), the triggering precondition for *Miranda* warnings is coerciveness. And, "[r]egardless of the presence of probable cause, until an officer acts to exert some type of restraint a suspect cannot reasonably believe [his] freedom is restrained." *United States v. Bengivenga,* 845 F.2d 593, 597 (5th Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988); *cf. Michigan v. Chesternut,* 486 U.S. 567, 575 n. 7, 108 S.Ct. 1975, 1980 n. 7, 100 L.Ed.2d 565 (1988) (officer's subjective intent "is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted"). Phrased in slightly different terms, custody, from a suspect's standpoint, has a subjective component; at a bare minimum, before getting to the objective reasonableness of the suspect's belief that he is being deprived of his freedom of action in some significant way, the suspect must show that such a belief in fact existed.

In this case, there was no such predicate. Appellant, thinking Sarra to be his partner in crime, had no reason to believe that he was subject to any restraints. He came to the airport voluntarily. Before engaging in the inculpatory discourse, he did not know that his companion was a law officer or that other policemen had the meeting under surveillance. He was unaware of the warrant. He was not told that he was under arrest. There was no coercion of any kind. Accordingly, no *Miranda* warnings were required. *See Masse,* 816 F.2d at 809; *United States v. Marks,* 603 F.2d 582, 584 (5th Cir.1979), *cert. denied,* 444 U.S. 1018, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980); *cf. United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.) (a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave").

■ Appellant's other argument against the use of these admissions posits that, by the time the statements were made, the charged conspiracy had effectively ended and had been replaced by a DEA operation. Appellant claims that the governmental scheming which led to his arrest was "outrageous" under the circumstances and should not be rewarded. In *United States v. Panitz,* 907 F.2d 1267 (1st Cir.1990), we rejected a similar contention, ruling that "the DEA's interception and seizure of the drugs, its employment of government resources and facilities to complete the smuggle and bring the contraband to Maine, its use of informants as go-betweens, and its casting of constables to play the parts of gang members ... does not come close to the level of egregious unacceptability that would be necessary to implicate the Due Process Clause." *Id.* at 1273. Here, as in *Panitz,* the DEA did nothing more than give the defendant an opportunity to continue in his own preplanned crime. The degree of governmental involvement was unquestionably allowable. *See, e.g., Unit-*

---

**5.** Thus, we need not consider the further possibility that Browne's and Pearson's statements were adopted by McDowell and hence admissible under Fed.R.Evid. 801(d)(2)(B) (statement

not hearsay if the party against whom it is offered "has manifested an adoption or belief in its truth").

ed States v. Penagaricano–Soler, 911 F.2d 833, 838–39 (1st Cir.1990); Panitz, 907 F.2d at 1272–73; United States v. Porter, 764 F.2d 1, 8 (1st Cir.1985), cert. denied, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); United States v. Rodriguez Ramos, 704 F.2d 17, 22 (1st Cir.), cert. denied, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). As a result, the evidence of McDowell's admissions was properly received.

■ 3. *Coconspirator Statements.* Next, appellant argues that evidence of statements made by his alleged coconspirators should have been excluded from evidence. This asseveration merits scant attention. Our review of the record indicates that the admission of the disputed statements was consistent with the requirements of Fed.R.Evid. 801(d)(2)(E), as articulated by the caselaw. *See, e.g., Bourjaily v. United States,* 483 U.S. 171, 174–77, 107 S.Ct. 2775, 2778–80, 97 L.Ed.2d 144 (1987); *United States v. Petrozziello,* 548 F.2d 20, 22 (1st Cir.1977). Though no conspiracy was charged in the indictment, the trial record supported a finding that the government had shown, by a preponderance of the evidence, that a common plan to import and sell cocaine existed; that Browne, Taylor, McDowell, and others were privy to the scheme; and that the statements were made during the conspiracy's course and in furtherance of it. The district court made such a finding at the close of the evidence.

Reviewing this multi-part finding only for clear error, *see United States v. Gomez–Pabon,* 911 F.2d 847, 856 (1st Cir. 1990); *United States v. Green,* 887 F.2d 25, 27–28 (1st Cir.1989), we discern none. Contrary to appellant's theory, it was immaterial that he played no active part in the smuggling of the contraband. *See, e.g., United States v. Boylan,* 898 F.2d 230, 242 (1st Cir.) (to be a coconspirator, one need not "participate in all [the conspiracy's] acts, know of the entire conspiratorial sweep, or be acquainted with all other defendants"), *cert. denied, —— U.S. ——,*

111 S.Ct. 139, 112 L.Ed.2d 106 (1990); *United States v. Drougas,* 748 F.2d 8, 17 (1st Cir.1984) ("every defendant [need] not participate in every transaction necessary to fulfill the aim of their agreement").[6]

4. *Other Items.* Appellant also complains that the court allowed the prosecution to introduce certain incriminating documents attributed to him, and to use the gun concealed on the driver's side of his vehicle as a factor in sentencing.

■ The record on appeal is obscure as to where and how the documents were obtained. This imprecision can be laid squarely at defendant's doorstep. The items' existence was disclosed by the government in a pretrial discovery letter, and defendant did not then challenge them or move to suppress. Any objection to their provenance was, therefore, waived. *See* Fed.R.Crim.P. 12(b)(3) (motion to suppress evidence must be brought prior to trial); Fed.R.Crim.P. 12(f) (defendant's failure, *inter alia,* to raise suppression question before trial "shall constitute [a] waiver thereof"); *see also United States v. Grandmont,* 680 F.2d 867, 872–73 (1st Cir. 1982) (where defense knew before trial that the government had, and intended to introduce, certain seized items, yet did not make further inquiry or move to suppress, defendant would not be relieved from Rule 12's temporal strictures).

On the same reasoning, and because no objection was taken to consideration of the firearm in the presentence investigation report, the remainder of McDowell's suppression argument collapses.

### Evidentiary Sufficiency

■ Appellant challenges the sufficiency of the evidence against him. The obstacles loom large. The docket indicates that, while appellant moved unsuccessfully for judgment of acquittal at the end of the government's case, he did not renew the motion after presenting evidence. We

---

6. The confessions made by Browne and Taylor, respectively, were redacted to eliminate any references to McDowell, and the jury was instructed that each man's statement could be considered only in respect to the charges against him. There was no contravention of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

have repeatedly held that such a failure constitutes a waiver of an earlier Fed.R. Crim.P. 29 motion, limiting our inquiry into evidentiary sufficiency to checking for clear and gross injustice. *See, e.g., United States v. Clotida,* 892 F.2d 1098, 1102–03 (1st Cir.1989); *United States v. Paz Uribe,* 891 F.2d 396, 399 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990); *Jimenez–Perez,* 869 F.2d at 11.

In this case, it makes no difference. We do not see how judgment of acquittal could have been granted, even if a timeous motion were made. The evidence against McDowell was solid. Browne called McDowell shortly after landing in Puerto Rico and immediately upon Taylor's arrest. McDowell's name and telephone number were on slips of paper in the couriers' possession. Among the documents appellant possessed were a receipt from Hotel Europa and a scrap of paper, both of which showed number "636–911" and the words "Europa" and "Room 317". These notations matched a Hotel Europa message slip found inside Taylor's duffel bag. McDowell responded to Browne's calls with alacrity and participated in several recorded conversations, at least one of which he initiated. His statements during these conversations were no less than damning; his own words indicated quite plainly his guilty knowledge and criminal intent. McDowell's subsequent discussions with Sarra were also highly incriminating.

We will not paint the lily. The prosecution may, of course, prove its case by circumstantial evidence. *See Boylan,* 898 F.2d at 243; *United States v. Campa,* 679 F.2d 1006, 1010 (1st Cir.1982). Applying the proper standard, a rational trier of fact could certainly have found McDowell guilty of complicity in the overall plot, and the specific offenses charged, beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (articulating standard); *see also United States v. Ingraham,* 832 F.2d 229, 239–40 (1st Cir.1987) (evidence need not preclude every reasonable hypothesis consistent with innocence so long as "a rational jury could look objectively at the proof and supportably conclude beyond reasonable doubt that the defendant's guilt had been established"), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). On this record, the jury could plausibly have inferred that McDowell was a prime mover in the smuggle, in league with Browne and Taylor from the start, directing their unlawful importation of the cocaine on board an aircraft, and intending to take possession of it for purposes of distribution once it arrived.

### Ineffective Assistance

McDowell was represented by a lawyer throughout the district court proceedings. At sentencing, with his attorney present, he made an oral—and wholly conclusory—claim that he had been deprived of effective assistance of counsel. At first, the district court debunked the claim, stating that it had observed counsel's performance at trial and was satisfied that counsel was "competent and ... [gave] his best to the best of his ability." Eventually, however, the court abjured consideration of the matter, pointing out that, should McDowell choose to pursue it, he could file a motion for post-conviction relief under 28 U.S.C. § 2255. McDowell presses the point on direct appeal.

We refuse to upset the district court's treatment of this issue. Our usual praxis has been not to consider such claims on direct appeal from criminal convictions where, as in this instance, assessment of the ineffective assistance claim would necessitate the taking of evidence not received below. *See, e.g., United States v. Sanchez,* 917 F.2d 607, 608 (1st Cir.1990); *Gomez–Pabon,* 911 F.2d at 862; *United States v. Hunnewell,* 891 F.2d 955, 956 (1st Cir.1989); *United States v. Costa,* 890 F.2d 480, 482–83 (1st Cir.1989); *United States v. Kobrosky,* 711 F.2d 449, 457 (1st Cir.1983). McDowell has given us no sound reason to depart from the norm. We therefore dismiss this assignment of error, without prejudice to appellant's right to pursue the point further, should he so elect, by filing a section 2255 petition in the district court.

*Sentencing Issues*

Appellant contests the district court's application of the sentencing guidelines in two respects.

■ 1. *The Firearm.* A loaded A.M.I. semiautomatic pistol was seized from within the vehicle which defendant drove to the Dallas/Fort Worth airport when en route to pick up the drugs. U.S.S.G. § 2D1.1(b)(1) instructs the district court that "[i]f a dangerous weapon (including a firearm) was possessed during the commission of the offense [of conviction]," the base offense level should be increased by two levels. We have held that, if a weapon was present, the adjustment should be made unless it is clearly improbable that the weapon and the offense were connected. *See, e.g., United States v. Ruiz,* 905 F.2d 499, 507 (1st Cir.1990); *United States v. Mocciola,* 891 F.2d 13, 17 (1st Cir.1989).

Here, the presentence investigation report (PSI Report) found the requisite nexus and recommended the increase; the defendant failed to object to the probation officer's finding of the necessary linkage between gun and offense; and the court used the augmented offense level. Given the facts of this case, we would be blinking reality were we to hold that the weapon's presence was purely coincidental or that any connection between it and the crime of conviction was improbable. The upward adjustment was warranted. *See, e.g., United States v. Rush,* 890 F.2d 45, 52 (7th Cir.1989) (defendant apprehended in train terminal, some distance from parked vehicle; appeals court affirms upward adjustment referable to loaded pistol found in vehicle); *see also United States v. Wheelwright,* 918 F.2d 226, 227–28 (1st Cir.1990) (court of appeals reviews such fact-based determinations under a "clearly erroneous" standard); *United States v. Heldberg,* 907 F.2d 91, 93–94 (9th Cir.1990) (affirming upward adjustment referable to weapon locked in trunk of drug trafficker's car); *United States v. Preakos,* 907 F.2d 7, 8–9 (1st Cir.1990) (per curiam); *United States v. Paulino,* 887 F.2d 358, 359 (1st Cir.1989).

■ 2. *Role in the Offense.* Defendant also complains that he was treated as an "organizer or leader," leading to a four level increase in the offense level. *See* U.S.S.G. § 3B1.1(a). Role-in-the-offense determinations are reviewed under the "clearly erroneous" standard. *See United States v. Ocasio,* 914 F.2d 330, 333 (1st Cir.1990); *United States v. Diaz–Villafane,* 874 F.2d 43, 48 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Of necessity, such "assessments are fact-specific, a circumstance suggesting that considerable respect be paid to the views of the nisi prius court." *Ocasio,* 914 F.2d at 333 (citation omitted).

The instant record certainly lends itself to the idea that McDowell orchestrated the smuggle and organized the logistics, using Browne and Taylor as deliverymen. His own comments, particularly in the taped calls, militate in favor of such a conclusion. But more was required to boost McDowell's offense level by four levels; for an increase of that magnitude, the court had to find both (1) that the defendant acted as "an organizer or leader of a criminal activity" and (2) that the activity "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a); *see also Preakos,* 907 F.2d at 9–10. The second of these requirements gives us great pause. While the identities of the leader's followers or other co-participants need not be expressly proved for purposes of a section 3B1.1 departure, *see United States v. Barbontin,* 907 F.2d 1494, 1498 (5th Cir.1990); *see also Diaz–Villafane,* 874 F.2d at 48 (approving similar role-in-the-offense adjustment despite lack of express identification of co-participants), there must be a specific finding, based on a preponderance of the evidence, which pinpoints them with enough particularity to give credence to the upward adjustment.

There was no such finding here. The PSI Report recommended the adjustment "[b]ased on the defendant's role as organizer/leader of a criminal activity involving five or more participants...." The Report neither suggested who the "five or more participants" might have been, nor discussed why five or more participants were necessarily involved. The only persons

mentioned in the Report who might qualify, on the facts described, were Browne, Taylor, and Pearson. The defendant himself was a fourth. *See Preakos*, 907 F.2d at 10 (defendant who actively participates in commission of offense can be counted under U.S.S.G. § 3B1.1). Two other people—Richard Williams and Debra English—were indicted, but the charges against them were dismissed. The PSI Report does not say why, nor does it address their involvement.[7]

The sentencing transcript is equally unilluminating. The judge made absolutely no findings in this regard. The appellee's brief on this point is close to phantasmagoric: the government first cites a gaggle of pre-guidelines cases dealing with limitations on appellate review of criminal sentences, *e.g., Farrow v. United States*, 580 F.2d 1339 (9th Cir.1978), none of which have the slightest bearing on this appeal; and then turns to the guidelines and analyzes the sentence as an upward departure, which it was not. We are left, then, to fend for ourselves, largely unaided by the probation officer, the court below, or the government.

In constructing the sentencing range under the guidelines, a district court must make reasonably specific findings. *See* 18 U.S.C. § 3553(c) (Supp.1990) (requiring sentencing judge to "state in open court the reasons for ... imposition of the particular sentence"); *United States v. Tucker*, 892 F.2d 8, 11 (1st Cir.1989); *United States v. Pimienta–Redondo*, 874 F.2d 9, 17 n. 8 (1st Cir.1989) (en banc); *see also United States v. Parrado*, 911 F.2d 1567, 1573 (11th Cir.

1990) ("[A] sentencing court should be mindful of the 'factors to be considered in imposing a sentence' when explaining its reasons for imposing a particular sentence and should tailor its statement accordingly") (quoting statute). Among other things, the statute requires the sentencing court to explain, generally, how it computed the applicable guideline range. *See United States v. Lockard*, 910 F.2d 542, 546 (9th Cir.1990); *see also United States v. Durrive*, 902 F.2d 1221, 1231–32 n. 8 (7th Cir.1990) (where court makes upward adjustment in offense level, and basis for the adjustment is less than obvious, "a sentencing judge might run afoul of section 3553(c)'s requirement if the judge neglected to explicitly state why the defendant's base offense level should be enhanced").

Here, the rule was not followed. Without substantial guesswork, we cannot tell the basis on which the judge determined that the criminal activity was sufficiently extensive to permit the four level upward adjustment. Hence, appellate review of McDowell's sentence is frustrated. *Accord United States v. Lanese*, 890 F.2d 1284, 1293–94 (2d Cir.1989) (vacating sentence because district court increased offense level pursuant to U.S.S.G. § 3B1.1(b) without making "a specific finding as to the identity of the 'participants'"). We see no choice, therefore, but to remand for resentencing, at which time specific findings should be made.[8]

### Conclusion

We need go no further. To be sure, appellant's discursive briefing contains

---

7. Persons such as Pearson, Williams, and English are eligible for consideration as "participants," even though not convicted. Appellant's assertion that only convicted coconspirators can be counted as "participants" is simply wrong. *See* U.S.S.G. § 3B1.1, commentary (n. 1) ("A 'participant' is a person who is criminally responsible for the commission of the offense but need not have been convicted."); *see also United States v. Reid*, 911 F.2d 1456, 1464–64 (10th Cir.1990).

8. In remanding, we do not suggest that there were less than five players in this tawdry game. The case record contains hints that Williams may have helped to rig military travel orders for

Browne and Taylor, that a person named "Jorge" may have assisted in loading the contraband in Panama, and that Debra English, appellant's common law wife, took certain telephone messages for Browne and Sarra. But there is nothing in the sentencing record about any of this. Absent explicit findings, it would be overly impetuous for us, on so exiguous a predicate, to jump to the conclusion that any of these persons were more likely than not accomplices. A defendant in the dock, awaiting imposition of sentence, is entitled to reasoned findings, on a preponderance standard, not to an appellate court's assumptions drawn free-form from an inscrutable record.

threads of other contentions. To the extent these arguments are developed, however, they are plainly unmeritorious and may be rejected out of hand. To the extent that these arguments remain at loose ends, they are not properly before us. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). And, to the extent that appellant complains of the district court's failure to make particularized findings and a written record thereof as required by Fed.R.Crim.P. 32(c)(3)(D), the necessity for resentencing renders the point academic.

To sum up, our examination of the record convinces us that the evidence against appellant was gathered legally, his trial was conducted fairly, and his conviction was lawfully obtained. Appellant is entitled, however, to a new sentencing hearing which, because of his familiarity with the case, ought to take place before the same judge.[9]

*The judgment of conviction is affirmed, the defendant's sentence is vacated, and the case is remanded for resentencing.*

---

**9.** In his brief, appellant requested for the first time that we designate counsel to offer oral argument on his behalf. We decline the request primarily because oral argument in this case would serve no useful purpose. *See* 1st Cir. Loc.R. 34.1(a)(iii) (court may deny oral argument where "decisional process would not be significantly aided").