**UNITED STATES, Appellee,**

v.

**Ramon PINEDA, Defendant, Appellant.**

**No. 91–1011.**

United States Court of Appeals, First Circuit.

Heard Sept. 15, 1992.

Decided Dec. 9, 1992.

Richard M. Passalacqua, Boston, MA, by Appointment of the Court, for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Kenneth P. Madden, Asst. U.S. Atty., Providence, RI, were on brief for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BRODY,* District Judge.

BRODY, District Judge.

Ramon Pineda was charged in a three count grand jury indictment with: 1) possessing heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); 2) using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and 3) being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). The jury found the defendant guilty on the heroin possession charge and not guilty on the charge of using and carrying a firearm during and in relation to a drug trafficking crime. The third count was dismissed on a motion by the government.

Pineda was sentenced to imprisonment for a term of seventy months, a five-year term of supervised release, costs of the supervised release, and a special assessment of $50.00. Pursuant to 18 U.S.C. § 3583(d), it was also ordered that the defendant be turned over to the Immigration and Naturalization Service for deportation proceedings upon completion of his prison sentence.

The defendant appeals under 18 U.S.C. § 3742(a), arguing that the district court clearly erred in sentencing by: 1) imposing a two-level enhancement for possession of a firearm in connection with a drug trafficking offense, U.S.S.G. § 2D1.1(b)(1); 2) applying a two-level adjustment for obstruction of justice, U.S.S.G. § 3C1.1; and 3) denying the defendant a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1.[1] There being no clear error in the district court's sentencing judgment, we affirm on the three issues raised by the defendant.

* Of the District of Maine, sitting by designation.

## I.

The following facts were developed at trial. On June 19, 1990, detectives from the Providence Police Department assembled at 116–118 Lexington Street in Providence, Rhode Island to execute a search warrant for the second floor apartment. While climbing the back stairs of the building, two detectives noticed the defendant standing in front of a closet located between the second and third floors. The defendant fled to the third floor where he was apprehended and searched. The detectives recovered a key and two packages, each containing fifty small packets of heroin. As the detectives escorted the defendant back to the second floor, they stopped at the closet and determined that the key fit the padlock on the door. The defendant was read his rights, in Spanish, and identified himself as Jesus Perez. He was then taken to the police station. One detective remained by the closet while other officers secured a search warrant for the closet and third floor apartment.

At the police station, the defendant signed a written advice-of-rights form and provided police with his correct name, Ramon Pineda, instead of the incorrect name previously supplied. When told that the police were securing warrants for the closet and third floor apartment, the defendant revealed that there were drugs in the closet but stated that there were none in the apartment.

The detectives returned to Lexington Street with the warrant. In the closet they found a quantity of heroin, a triple beam balance scale bearing the defendant's fingerprints, a red duffel bag containing two guns and a small box of ammunition, and various other items. The total amount of heroin seized was 61.027 grams. In the third-floor apartment, where the defendant and his wife resided, the police discovered almost $25,000 in cash, a beeper, plastic bags, some marijuana, and a bottle of lac-

1. All sentencing guideline citations refer to the November 1990 guidelines in effect at the time of the defendant's December 1990 sentencing.

tose. Lactose is commonly used to dilute heroin.

The defendant asserted at trial that he became involved with the heroin when, only days before his arrest and while at a nightclub, he ran into an old acquaintance named "George." Upon learning of the defendant's financial difficulties, George reportedly offered him $1,000 per week to store heroin. The defendant is unable to further identify George except to say that he originally met him in the Dominican Republic and that George now lives in New York. According to the defendant, George and an associate named Flaco brought heroin to the apartment building the very next day, stored it in the stairway closet, and padlocked the door. Each of the three held a key. During the next few days, Flaco allegedly returned to remove a quantity of heroin and give the defendant money to hold.

The defendant testified that, although he had never sold heroin previously, he was persuaded by an acquaintance to sell the drugs to a stranger on June 19, 1990. The police arrival coincided with his attempt to consummate this deal.

The defendant further testified that he had not entered the closet since the heroin was placed there and that he was unaware that the closet contained guns. There is no explanation in the record regarding the presence of the defendant's fingerprints on the scale or the lactose in his apartment.

After the trial the defendant acknowledged his involvement with the drugs and cash. When asked by the probation officer, in Spanish, whether he had ever been arrested in this or any other country, the defendant responded that he had not. The probation officer later determined, through a fingerprint match, that the defendant had been arrested only a few months earlier on a firearms charge in New York. After the defendant gave law enforcement officers a false name, Jesus Rosario, and then failed to appear on the charge, the New York court issued a bench warrant for the defendant's arrest.

In imposing sentence, the trial court accepted the probation officer's recommendations, as set forth in the presentence report, and set the base offense level at 22 (for possession of between 60 and 80 grams of heroin). The court applied a two-level enhancement for possession of a firearm in connection with the drug trafficking offense and another two-level enhancement for obstruction of justice. It denied the defendant's requested reduction for acceptance of responsibility and used a total offense level of 26 in determining the sentence.

## II.

The appropriate standard of review is set forth in 18 U.S.C. § 3742(e).

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

■ The Supreme Court has held, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations and quotations omitted). This clear error standard applies whether the district court's finding is based on a factual determination or an application of the sentencing guidelines. *See United States v. Martinez*, 922 F.2d 914, 925 (1st Cir.1991) ("Due deference in this context means that, absent mistake of law, we will review the sentencing court's fact-based application of the guidelines only for clear error.").

## III.

■ Section 2D1.1(b)(1) of the sentencing guidelines directs the sentencing court to increase the offense level by two for drug trafficking crimes "if a dangerous weapon (including a firearm) was possessed during

commission of the offense." If the weapon was present, the adjustment should be applied "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1), Application Note 3.

The defendant asserts that the district court's decision to enhance the sentence under U.S.S.G. § 2D1.1(b)(1) was incorrect for three reasons: 1) the defendant had no knowledge of the firearm; 2) the firearm was not easily accessible to the defendant; and 3) the evidence presented at trial does not meet the preponderance standard. These arguments are not persuasive.

The district court specifically determined that the defendant was aware that the guns were in the closet.

I also agree that certainly the defendant knew the gun was there. The only person who was observed at the closet was the defendant. The only key to the closet was recovered from this defendant. The defendant's fingerprints were found on the scale in the closet and though the defendant referred to an elusive George as perhaps the person who placed the firearm in the closet, the identity of this person could not be corroborated.

Tr. (12/11/90) at 14–15.

The district court's finding that the defendant was aware of the presence of guns in the closet is sufficiently supported by the evidence.

The defendant portrays himself as an essentially law-abiding person who was tempted into a drug scheme by his desperate need for money. This characterization is undermined by the bizarre account of his random encounter with George at the nightclub; his inability to further identify either George or Flaco; his possession of the only recovered key to the closet; the discovery of firearms in the same small closet as the drugs; his fingerprints on the scale; the lactose and large quantity of money in his apartment; and the defendant's willingness to sell drugs, which he maintains did not belong to him, to a complete stranger.

The defendant contends that the weapon was not readily accessible to him during the sale of heroin and, thus, not in his possession. The defendant relies on *United States v. Vasquez*, 874 F.2d 250 (5th Cir.1989), to support his contention that the firearm must be in close proximity to the perpetrator or crime scene during the commission of the offense. *Vasquez* is easily distinguishable from the present case. In *Vasquez*, the police found a loaded gun in the defendant's bedroom, several miles from where he was arrested on drug charges. Because the defendant in this case was at most one hundred feet from the guns when he was apprehended by the police, the reliance on *Vasquez* is inapposite.

█ In regard to enhancement, this Court has held that "if a weapon was present, the adjustment should be made unless it is clearly improbable that the weapon and the offense were connected." *United States v. McDowell*, 918 F.2d 1004, 1011 (1st Cir.1990). While a nexus must be shown between the weapon and the criminal act, the defendant need not have the weapon on his person or in the immediate vicinity for the enhancement to apply. Presence may be constructively established. In *McDowell*, the defendant was arrested while attempting to recover drugs from an airport locker. The enhancement was applied when, after his arrest, the defendant's car was seized from the airport lot and found to contain a gun. In *United States v. Paulino*, 887 F.2d 358 (1st Cir. 1989), we affirmed the district court's enhancement for a weapon found stored in a different apartment from that in which the drugs were seized.

In *United States v. Corcimiglia*, 967 F.2d 724, 727–28 (1st Cir.1992), we stated:

[W]hen the weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the offense conduct.... The burden then falls on defendant to come forward with evidence of special circumstances that would render it "clearly improbable" that the

weapon's presence has a connection to the narcotics trafficking.

The defendant was found guilty of possession of heroin with intent to distribute. The firearms were found in the same closet where some of the heroin was stored. They could be easily accessed when drugs were removed from the closet and they were only a few steps down the stairs from the defendant's apartment door. The firearms were readily available to protect both the defendant and the drugs should protection have been required. These facts are sufficient to support the finding of the required nexus between the guns and the offense. As the district court stated:

> It can't be denied that the firearm was clearly present and ... connected to the heroin offense. The closet contained the heroin, the scale, the two firearms, ammunition and a shirt. Nothing else was found in that closet. I must conclude that it is not clearly improbable that firearms were connected to that.

Tr. (12/11/90) at 13–14.

■ The defendant's acquittal on the charge of using and carrying a firearm in relation to a drug trafficking crime is not determinative in the sentencing decision. The jury's not guilty verdict merely demonstrates the government's failure to prove the charge beyond a reasonable doubt. "Case law clearly establishes that the government need not prove the facts used for sentencing 'beyond a reasonable doubt.' The Supreme Court has held that the 'preponderance standard satisfies due process.'" *United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989) (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986)).

The declaration of the *McDowell* court is applicable here. "Given the facts of this case, we would be blinking reality were we to hold that the weapon's presence was purely coincidental or that any connection between it and the crime of conviction was improbable." *McDowell*, 918 F.2d at 1011. It was not clear error for the district court to conclude that the defendant failed to show sufficient evidence of special circumstances to render a connection between the

guns and the narcotics trafficking clearly improbable.

## IV.

■ Plaintiff next contends that it was clear error for the district court to apply a two level increase for obstructing or impeding the administration of justice.

The sentencing guidelines direct the court to increase the offense level by two levels "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. As part of a "non-exhaustive" list of examples of conduct for which this enhancement applies, application note three of the commentary includes "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1, Application Note 3(h). "'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, Application Note 5.

At issue here is whether the defendant's failure to acknowledge the prior arrest in New York constitutes withholding of material information. The defendant argues that his failure to report the earlier arrest did not obstruct the sentencing proceeding because the information was easily discoverable by the probation officer. It should be noted, however, that § 3C1.1 includes attempts to obstruct justice as well as actual obstruction. Furthermore, the probation officer was only successful in discovering the previous arrest because he chose to run a fingerprint check on the defendant. A normal search of his arrest record would not have yielded the information because the defendant failed to use his correct name in New York.

The defendant's reliance on *United States v. Manning*, 955 F.2d 770 (1st Cir. 1992) is misplaced. *Manning* deals with a defendant who gave a false name to arrest-

ing officers. Application note four specifically states that "providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hinderance to the investigation or prosecution of the instant offense" is conduct that does not warrant application of this enhancement. U.S.S.G. § 3C1.1, Application Note 4(c). Here we are dealing with materially false statements to a probation officer, specifically covered in application note three, quoted *supra*, and included in a list of examples setting forth where the enhancement applies.

In *United States v. Dedeker*, 961 F.2d 164 (11th Cir.1992), the court held that the defendant's failure to disclose a previous conviction amounted to an attempt to obstruct justice under the guidelines, even though it did not bear on his criminal history calculation. Referring to § 3C1.1, the court stated "the threshold for materiality is conspicuously low ... The 'issue under determination' when the probation officer inquires into past convictions is either what criminal history category shall apply, or, what sentence within the calculated range shall be appropriate." *Dedeker*, 961 F.2d at 167. Other courts have made similar determinations. *See United States v. Gaddy*, 909 F.2d 196 (7th Cir.1990) (defendant's concealment of identity merited an enhancement as the concealment would have substantially interfered with the administration of justice); *United States v. Williams*, 897 F.2d 1034 (10th Cir.1990) (defendant's failure to reveal prior conviction which was later overturned justified enhancement for obstruction).

The defendant's denial of his prior arrest must be considered material in light of the sentencing guidelines. The defendant was awaiting trial on weapons charges in New York at the time he committed the offense of conviction. The sentencing guidelines allow for an upward departure if the defendant was awaiting trial or sentencing on another charge at the time of the instant offense. U.S.S.G. § 4A1.3(d). Indeed, the

district court noted that this prior charge was a consideration in its sentencing decision. "[I]t seems to me that seventy months is a fair sentence especially when you view this in conjunction with his pending charge in New York ... and that he was on bail on that offense when he committed this offense." Tr. (12/11/90) at 17–18.[2] By denying his prior arrest, the defendant impeded the sentencing court's determination of an appropriate sentence.

## V.

■ The defendant's final argument is that the district court erred in failing to award a two level decrease for acceptance of responsibility. U.S.S.G. § 3E1.1(a) directs the district court to reduce the offense level by two levels "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The application notes state:

[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt.... In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, Application Note 2.

The district court judge is in a "unique" position to evaluate the defendant's acceptance of responsibility and his determina-

---

**2.** The government asserts that the district court implicitly found the defendant guilty of perjury. This would also qualify for an obstruction of justice enhancement under § 3C1.1, Application Note 3(b). We need not reach this issue as we find that there is sufficient support for the district court's obstruction of justice determination.

tion is "entitled to great deference on review." U.S.S.G. § 3E1.1, Application Note 4.[3]

The defendant asserts that he has expressed the "requisite remorse" by voluntarily disclosing to the police that they would find heroin in the closet, by his comments to the arresting officer, and through his post-trial letter to the district court.

In keeping with the deference accorded to the district court's determinations on acceptance of responsibility, this Court finds no basis to overturn the trial court's decision. This is not one of the "rare" instances where the defendant may assert his right to trial and also claim acceptance of responsibility. While the defendant could have contested only the gun charge, he also put the government to its burden of proof for the drug charge. The right to trial is not to be discouraged, but this factual scenario does not support a request by the defendant for a reduction of sentence for acceptance of responsibility.

Furthermore, although it is true that the defendant acknowledged the presence of the heroin in the closet, he did so only after being informed that a warrant would soon issue to search the closet. He also did not inform the officers of the money secreted in his apartment.

"Whether a defendant 'clearly demonstrates a recognition and affirmative acceptance of personal responsibility' is a fact-dominated issue, and the district court's decision to withhold a reduction in the offense level will not be overturned unless clearly erroneous." *United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990). The district court's denial of the reduction is firmly rooted in the record and case precedent.

### VI.

■ Although the issue is not raised by the defendant, the government suggests that the district court may have erred in imposing the costs of supervised release on the defendant. The defendant was repre-

sented by retained counsel and the trial court never formally declared the defendant indigent. The court did, however, decline to impose a punitive fine on the defendant due to his inability to pay.

This Court recently held in *United States v. Corral*, 964 F.2d 83, 84 (1st Cir.1992), that the costs of supervised release constitute an additional fine under § 5E1.2(a) of the Sentencing Guidelines and should not be imposed where a defendant has been found indigent and, thus, exempt from a punitive fine. In light of the trial court's determination that the defendant cannot afford to pay a punitive fine, we VACATE the assessment of the costs of supervised release.

*The district court judgment is affirmed in part and vacated in part.*

---

**3.** Application note 4 to U.S.S.G. § 3E1.1 states that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Ad-

ministration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."