**UNITED STATES of America, Plaintiff,**

v.

**Billy Ray McDOWELL, Jr., Defendant.**

**Crim. No. 88–051 (RLA).**

United States District Court,
D. Puerto Rico.

Aug. 30, 1993.

U.S. Atty., United States Attys. Office, Hato Rey, Puerto Rico, for plaintiff.

Billy Ray McDowell, Jr., pro se.

**OPINION AND ORDER**

ACOSTA, District Judge.

BILLY RAY McDOWELL, JR. has requested a new trial based on the ground of newly discovered evidence pursuant to Rule 33 Fed.R.Crim.P. Additionally, defendant submitted an "addendum" to his motion for new trial, a motion to expand the record with newly discovered evidence, and a reply to the government's opposition to defendant's motion for new trial.

According to the defendant, prior to his arrest in this case, telephone conversations held between him and Drug Enforcement Administration ("DEA") agent Francisco Sarra[1] were recorded by the government. McDOWELL contends that the tape of these conversations contains exculpatory evidence and that the government failed to produce it despite his request made prior to trial. Originally the government claimed that the tape containing such conversations was either inaudible or nonexistent. In addition to the tape recordings, the defendant alleges that the government failed to present other evidence, i.e., telephone bills, that were material to his plea of innocence. The defendant further contends that the witnesses in this case falsely testified as to events that are contradicted in the aforementioned tape.

## BACKGROUND

On January 30, 1988, codefendants Franklin Milton Browne and Darrin Taylor[2] arrived at the Roosevelt Roads Naval Base located in Ceiba, Puerto Rico, on board a Military Airlift Command ("MAC") flight.[3] Pursuant to a Customs' inspection, approximately 7.1 kilograms of cocaine were found inside their duffel bags. With Browne's cooperation, defendant BILLY RAY McDOWELL was subsequently arrested and indicted. On June 28, 1988 McDOWELL was found guilty by a jury of aiding and abetting the unlawful importation into the United States, possession with the intent to distribute, and possession on board an aircraft of the aforementioned drugs, in violation of 21 U.S.C. §§ 841(a)(1), 952(a), and 955. He was sentenced by this Court on December 6, 1988 to serve a term of imprisonment of 241 months as to each count of a three-count indictment, such terms to be served concurrently with each other, and to pay a fine in the amount of $150,000.00. Terms of 5 years of supervised release and a special monetary

assessment of $50.00 per count were also imposed.

The judgment of conviction was affirmed, but defendant's sentence was vacated and the case remanded for re-sentencing. *See United States v. McDowell,* 918 F.2d 1004 (1st Cir.1990).

This Court re-sentenced the defendant on April 4, 1991 to serve a term of imprisonment of 151 months. The other terms and conditions imposed as part of his original sentence remained unchanged. Once again the defendant appealed his sentence, but the same was affirmed. *See United States v. McDowell,* 957 F.2d 36 (1st Cir.1992).

## MOTION FOR NEW TRIAL

### Timeliness

"A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment...." Fed.R.Crim.P. 33. As indicated by the United States Supreme Court: "Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937) (citations omitted). It is uncontested in this case that the defendant filed a timely motion for new trial.

### Standard

■ In order to prevail in his request, defendant must establish the following:

A motion for new trial on the basis of newly discovered evidence will ordinarily not be granted unless the moving party can demonstrate that: (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result

---

1. Agent Sarra or Sierra, as he is sometimes referred to on the record of this case, called the defendant pretending to be codefendant Franklin Milton Browne.

2. *See United States v. Browne,* 891 F.2d 389 (1st Cir.1989).

3. The flight made a scheduled stop at Roosevelt Roads on its return trip to the continental United States from Howard Air Force Base in Panama.

in an acquittal upon retrial of the defendant.

*United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980) (citations omitted). "The defendant must shoulder the burden of establishing each facet of the four-part test." *United States v. Slade*, 980 F.2d 27, 29 (1st Cir.1992) (citations omitted). "If any of the four factors of the *Wright* test are lacking, then a Rule 33 motion must be denied." *United States v. Natanel*, 938 F.2d 302, 313 (1st Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992) (citing *Wright*).

As further noted by the Court in *Natanel*, "[f]or newly discovered evidence to warrant a retrial in a criminal case, the existence of the required probability of reversal must be gauged by an objectively reasonable appraisal of the record as a whole, not on the basis of wishful thinking, rank conjecture, or unsupportable surmise." *Id.* at 314.

In light of the applicable legal standards and after having reviewed the evidence presented at trial, together with the evidence presented by defendant McDOWELL at this time, we have to disagree with his arguments and deny his motion for new trial.

Defendant McDOWELL's conviction, as determined by the jury, is amply supported by the evidence on record, especially on the trial testimony of DEA criminal investigator Thomas M. Kusen and DEA agent Francisco Sarra; as well as the recordings of telephone conversations between codefendants Browne and McDOWELL, and Browne and McDOWELL's wife, Debra English. *See* Trial Tr. at 431–530, 531–79, and 600–20.

Mr. Kusen testified, *inter alia*, that upon being interrogated, codefendant Browne admitted that "he had smuggled two kilos of cocaine on board the Military Airlift Command flight for which he was to be paid two thousand for [sic] per kilogram that was smuggled." Trial Tr. at 482–83.[4] Mr. Kusen

also testified that he found a note, i.e., a torn off piece of paper, on codefendant Taylor's wallet, that contained several names and telephone numbers. Agent Kusen later found a note in Browne's possession with essentially the same information as that contained in Taylor's note. Kusen also found a "Hotel Europa" message slip inside one of the pockets of a sport's shirt located in Taylor's duffel bag which had written on it the name "Taylor" twice, telephone number "636–911" and "Room 317". *See* Trial Tr. at 500, 502. At trial, agent Sarra testified that as a result of a search of defendant McDOWELL's residence, two loose leafs from a note pad were seized. These pages also contained the number "636–911", the word "Europa" and "Room 317" written on them. *See* Trial Tr. at 560–61. After Browne agreed to cooperate with the government, he and Mr. Kusen placed several telephone calls in Puerto Rico to the numbers on the notes found in Taylor's and Browne's possession. The telephone calls were being monitored and recorded by Kusen. On the calls, Browne pretended that he had not been apprehended, and it was under this pretext that a collect call was placed to telephone number (817) 536–6700 in Forth Worth, Texas. Trial Tr. at 487. The collect call was placed through an operator, and accepted by the receiver, Debra English. Ms. English identified herself during this conversation as defendant McDOWELL's wife. Trial Tr. at 604–08.[5] Subsequent to this call, an incoming telephone call from defendant McDOWELL was received and recorded. *See* Trial Tr. at 610–17. Thereafter, Mr. Kusen contacted agent Sarra in Fort Worth, Texas and a controlled delivery of the drugs found in Browne's duffel bag was carried out. During the course of the undercover operation, agent Sarra posed as codefendant Browne since both codefendants, i.e., McDOWELL and Browne, had never seen each other.

---

4. According to agent Kusen, when he interrogated codefendant Taylor, this defendant also told Kusen that "he was going to be paid two thousand per kilogram of cocaine that was successfully smuggled into the Continental United States." Trial Tr. at 467.

5. It should be noted that, according to the transcript of this telephone call, Ms. English did not hesitate for a moment in accepting Browne's collect call, and even told him that her husband had asked her to get Browne's number as soon as he called, so that McDOWELL could call him back. *See* Trial Tr. at 604.

## Phone Bills

■ Defendant McDOWELL now claims that the aforementioned collect call never took place. To "prove" his claim, he has submitted "newly discovered evidence" in the form of telephone bills for the months of January and February, 1988, that do not reflect such a call. *See* Exhibit A of the Exhibits for Record Expansion. The problem with these bills, however, is that they belong to another telephone number, i.e., (214) 384–4270, which appears to be the number of McDOWELL's "mobile" phone. *See* Trial Tr. at 562. The collect call in question, as the record shows, was made to his residence's telephone number, that is, (817) 536–6700. Even if the submitted phone bills had any bearing in this case, defendant McDOWELL has completely failed to indicate why he was unable to obtain the evidence prior to trial. He has not indicated that the existence of the phone bills was unknown or that they were unavailable to him at the time of trial, and/or that the failure to learn of this evidence was not due to his lack of diligence.

## Recordings

Before addressing the particular issues raised by defendant, it is important to identify the various categories of recordings involved in defendant's case. First, there are the recordings of the monitored telephone conversations upon Browne's arrest in Puerto Rico with McDOWELL and his wife which were made available to defendant prior to trial. Second, there are the recordings of telephone conversations in Texas between Sarra, acting as Browne, with both defendant and his wife. Lastly, there is a recording of the drug transaction at the airport. These last two are the subject of defendant's petition because apparently they were not made available to him until re-sentencing and have thus been submitted as "newly discovered evidence".

Defendant has submitted a tape recording of telephone conversations sustained between him and agent Sarra as well as between Sarra and McDOWELL's wife. *See* Exhibit B of the Exhibits for Record Expansion. Although it is undisputed that the government failed to produce this particular tape prior to trial,[6] we have listened to the tape and fail to see how its contents could be considered favorable or material to McDOWELL's guilt or punishment.[7] *See Brady v. State of Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

■ It is defendant's contention that the tape reveals the fact that he had no knowledge of the specific amount of money that he was to pay Browne for the delivery of the cocaine, and that it was only as a result of agent Sarra's request, while posing as Browne, that McDOWELL arrived at the airport with $4,000.00 in his possession.

In its pertinent part, the tape contains a telephone conversation between McDOWELL and agent Sarra, while Sarra was posing as Browne and McDOWELL was on his way to pick him up at the airport. Sarra/Browne was at a pay phone in the airport and McDOWELL was speaking from his "mobile" phone.[8] During the course of the conversation, Sarra/Browne asked whether or not McDOWELL had the money and when asked how much, Sarra/Browne responded he expected it to be $4,000.00. McDOWELL then stated he had not been advised it was that much[9] but it presented no problem and he could get it.

Significantly, agent Sarra was confronted at trial with the fact that McDOWELL did

---

**6.** *See* Re-sentencing Tr. at 9–11.

**7.** It should be noted that the "newly discovered" tape was available at the time of McDowell's re-sentencing. *See* Re-sentencing Tr. at 9–11.

**8.** It appears from the tape that agent Sarra was at the airport talking to Debra English and she made the connection from her telephone, i.e., a

three-way call, for Sarra to talk to McDOWELL. Defendant McDOWELL was in his vehicle at the time.

**9.** Apparently referring to a third person by the name of Anthony Pearson. *See* Trial Tr. at 610–17.

not know the exact amount that he was to pay Browne for the delivery of the cocaine. Thus, the jury had an opportunity to consider this particular issue before reaching a determination in McDOWELL's case. The pertinent transcript of Sarra's cross-examination by McDOWELL's attorney reads as follows:

Q So the conversation that transpired between you and Mr. Bill Ray McDowell that afternoon was recorded?

A An attempt was made to record it.

Q Was it in fact recorded?

A Actually, what was recorded was a lot of noise because a security alarm in the airport went off.

Q Where is that recording now?

A It should be here.

Q You claim that four thousand were handed over to you?

A No, it was seized out of his person.

. . . .

Q Mr. Sarra, the fact is that when you first met Mr. Bill Ray McDowell and inquired about the four thousand you just mentioned, Bill Ray said what are the four thousand for, right, he asked you?

A Are you referring to the phone call?

Q I'm referring to the four thousand when requested over the phone call.

A I believe he said—I have to look at the report, but to my recollection when I asked him if he had brought my money. He said what money, and I asked him if he had not agreed to bring me four thousand.

Trial Tr. at 567 and 570.

There was also an attempt to record the controlled drug delivery at the airport but there is in fact so much background noise that the tape recording of the conversation between Sarra/Browne and McDOWELL is unintelligible.

However, after listening to the entire tape containing the recordings of agent Sarra in Texas during the undercover operation that was submitted by McDOWELL in support of his motion for new trial, we find it contains cumulative evidence. At the most, the evidence could have been used for impeachment purposes as to agent Sarra, but we do not consider it, by any stretch of the imagination, to be material or of such an impact that if used at a new trial it will probably result in McDOWELL's acquittal. The Court of Appeals for the First Circuit has indicated that impeaching evidence is insufficient for a party to obtain a new trial on the ground of newly discovered evidence.

[The] petitioner must show, among other things, that the new evidence is material and is not merely cumulative or *impeaching* .... *United States v. Benavente–Gomez*, 921 F.2d 378, 382 (1st Cir.1990) (emphasis added); *United States v. Martin*, 815 F.2d 818, 824 (1st Cir.), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987); *see United States v. Rodriguez*, 738 F.2d 13, 18 (1st Cir.1984) (on motion for new trial, impeachment evidence is presumptively immaterial); *Pelegrina v. United States*, 601 F.2d 18, 21 (1st Cir.1979) (impeaching evidence is generally treated as immaterial on motion for new trial); *United States v. Bonadonna*, 775 F.2d 949, 957 (8th Cir.1985) (newly discovered evidence which is merely impeaching normally cannot form the basis for a new trial); *see generally* 3 Charles A. Wright, *Federal Practice and Procedure* § 557 (1982). Since it does not bear directly on the defendant's guilt or innocence, impeachment evidence ... does not rise to the level of materiality that would be likely to cause a different result at a new trial. *Benavente–Gomez*, 921 F.2d at 383.

*Barrett v. United States*, 965 F.2d 1184, 1195 (1st Cir.1992) (quotation marks and brackets included in original omitted).

There is no doubt, and the jury so determined, that defendant McDOWELL was clearly associated with the criminal venture involved in this case. This conclusion was confirmed by the Court of Appeals.

We do not see how judgment of acquittal could have been granted.... The evidence against McDowell was solid. Browne called McDowell shortly after landing in Puerto Rico and immediately upon Taylor's arrest. McDowell's name and telephone number were on slips of paper in the couriers' possession. Among the documents appellant possessed were a

receipt from Hotel Europa and a scrap of paper, both of which showed number "636–911" and the words "Europa" and "Room 317". These notations matched a Hotel Europa message slip found inside Taylor's duffel bag. McDowell responded to Browne's calls with alacrity and participated in several recorded conversations, at least one of which he initiated. His statements during these conversations were no less than damning; his own words indicated quite plainly his guilty knowledge and criminal intent. McDowell's subsequent discussions with Sarra were also highly incriminating.

We will not paint the lily. The prosecution may, of course, prove its case by circumstantial evidence.... Applying the proper standard, a rational trier of fact could certainly have found McDowell guilty of complicity in the overall plot, and the specific offenses charged, beyond a reasonable doubt.... On this record, the jury could plausibly have inferred that McDowell was a prime mover in the smuggle, in league with Browne and Taylor from the start, directing their unlawful importation of the cocaine on board an aircraft, and intending to take possession of it for purposes of distribution once it arrived.

*United States v. McDowell,* 918 F.2d at 1010 (citations omitted).

## CONCLUSION

In view of the above, we find defendant McDOWELL's motion for new trial to be without merit. Accordingly, the petition for new trial; defendant's addendum; motion to expand the record; and the reply to the government's opposition to defendant's motion for new trial are hereby **DENIED.**

IT IS SO ORDERED.